805 F.2d 888
 WORLDWIDE CHURCH OF GOD, a California nonprofit corporation;
Raymond McNair, and Roderick G. Meredith,
Plaintiffs-Appellants,
v.
Leona McNAIR, and Superior Court of the State of California,
Defendants- Appellees.
 No. 85-5979.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 9, 1986.
Decided Dec. 5, 1986.
 
 Ralph K. Helge, Ralph K. Helge & Assoc., Pasadena, Cal., Allan Browne, Browne & Woods, Beverly Hills, Cal., for plaintiffs-appellants.
 Antony Stuart, DeWitt Clinton, Cty. Counsel, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before SCHROEDER and FLETCHER, Circuit Judges, and VOORHEES,* District Judge.
 FLETCHER, Circuit Judge:
 
 
 1
 The Worldwide Church of God, Raymond McNair, and Roderick Meredith (the plaintiffs) bring this action under 42 U.S.C. Sec. 1983 against Leona McNair and the Superior Court of the State of California, contending that a state court jury verdict against them for defamation, infliction of emotional distress, and conspiracy is unconstitutional. The plaintiffs assert that the allegedly defamatory statements constitute expressions of religious belief made in the context of an ecclesiastical debate and therefore that the statements are protected under the first amendment. We conclude that the district court lacked subject matter jurisdiction over the action, and that it should have dismissed on that basis.
 
 I. BACKGROUND
 
 2
 Raymond McNair is an Evangelist in the ministry of the Worldwide Church of God (the Church). According to the plaintiffs, Raymond and his former wife Leona McNair began having marital difficulties in 1973. Raymond sought the Church's counsel, but the marriage did not improve. Raymond obtained an "ecclesiastical determination" that the marriage was no longer "Scripturally bound," thus enabling him to proceed with a Church-sanctioned divorce in 1976 and remarriage in 1977. Raymond was the first high-ranking Church minister who had been permitted to do so. The plaintiffs state that the Church condemns divorce, except in limited, scripturally-defined circumstances, when one spouse has failed to fulfill basic marital responsibilities and has left the Church, or habitually has violated Church doctrine.
 
 
 3
 The plaintiffs contend that many Church officials felt that Raymond had received special treatment, because of his status in the Church hierarchy and his close friendship with Church leaders. Thus, the McNair divorce and remarriage sparked controversy among the Church ministers, requiring further clarification and explanation. The plaintiffs assert that full explanation was critical, in view of existing serious internal disputes over fundamental Church doctrines at the time.
 
 
 4
 At a Ministerial Conference in January 1979, and later in a Church publication titled the Pastor's Report, Roderick Meredith, the Church's Director of Pastoral Administration and Raymond McNair's close friend and relative, made statements concerning the McNair divorce. In an address given at the conference, Meredith justified the divorce on the basis of Leona's conduct. He said that she "was literally cursing him [Raymond] and cursing Mr. Armstrong [the Church's leader] ... spitting in people's faces and as hateful as a human being could be;" that she was "one of the major enemies of God's Church in Southern California;" that Raymond lived "without a wife in a virtual hell on earth" and Leona "just wanted to keep him on a string and get a free ride."
 
 
 5
 In the Pastor's Report, Meredith stated in part that Leona had "turn[ed] his children against him," "refused to be a wife to him for over two years--to sleep with him, to cook for him, or even civilly communicate with him in a decent manner ... she had deserted him." (emphasis in original).
 
 
 6
 Leona McNair sued the Church, Meredith, Raymond McNair, and other Church officials and entities in the California Superior Court. In August, 1984 the jury returned a verdict in Leona's favor against Raymond McNair, Meredith, and the Church for libel, slander, intentional infliction of emotional distress, and conspiracy. The jury awarded $260,000 in compensatory damages, and $1,000,000 in punitive damages. The plaintiffs' appeal from that judgment currently is pending in the California Court of Appeal. Enforcement of the judgment has been stayed by posting a bond.
 
 
 7
 In March 1985, the plaintiffs sued Leona McNair and the California Superior Court in federal district court under 42 U.S.C. Sec. 1983. The plaintiffs contend that the allegedly defamatory statements were made to summarize the factual basis for the Church's ecclesiastical determination regarding the McNair divorce, and that the statements were part of a doctrinal pronouncement to ministers made in a private ecclesiastical forum. As such, the statements constitutionally are protected, because they constitute expressions of religious belief, the truth of which cannot be questioned in a defamation suit. Alternatively, the plaintiffs argue that the state trial court should have required the jury to find actual malice, based on the New York Times v. Sullivan standard.
 
 
 8
 The plaintiffs requested the district court to declare the state trial court verdict unconstitutional and to enjoin state court enforcement of the judgment. The district court granted Leona McNair's motion to dismiss, on Younger abstention grounds. The district court reasoned that the state appellate court would consider the federal constitutional issues on appeal, and that the state had a vital interest in fashioning a law of defamation. The plaintiffs timely appeal.
 
 II. DISCUSSION
 
 9
 As a preliminary matter, we must address the federal court's jurisdiction. See Solano v. Beilby, 761 F.2d 1369, 1370 (9th Cir.1985) (the court of appeals must raise jurisdictional issues sua sponte). The United States District Court, as a court of original jurisdiction, has no authority to review the final determinations of a state court in judicial proceedings. 28 U.S.C. Sec. 1257 provides that the proper court in which to obtain such review is the United States Supreme Court. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983). See Atlantic Coast Line R. Co. v. Locomotive Engineers, 398 U.S. 281, 296, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970) (lower federal courts may not sit in review of state courts' decisions); Rooker v. Fidelity Trust Co., 263 U. S. 413, 415-16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923) (district courts may not exercise appellate jurisdiction over state courts); Robinson v. Ariyoshi, 753 F.2d 1468, 1471-72 (9th Cir.1985) (federal court has no jurisdiction over federal constitutional issues if consideration would require a review of the allegations underlying the state judicial decision), vacated on other grounds, --- U.S. ----, 106 S.Ct. 3269, 91 L.Ed.2d 560 (1986); Texaco v. Pennzoil Co., 784 F.2d 1133, 1141-42 (2d Cir.) (inferior federal courts may not act as appellate tribunals over state courts) prob. juris. noted, --- U.S. ----, 106 S.Ct. 3270, 91 L.Ed.2d 561 (1986).
 
 
 10
 This doctrine applies even when the challenge to the state court decision involves federal constitutional issues. Feldman, 460 U.S. at 484-86, 103 S.Ct. at 1316 (quoting Doe v. Pringle, 550 F.2d 596, 599 (10th Cir.1976), cert. denied, 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977), for the proposition that "[t]his rule applies even though, as here, the challenge is anchored to alleged deprivations of federally protected due process and equal protection rights"); Robinson, 753 F.2d at 1472. The rationale for this rule is that state courts are as competent as federal courts to decide federal constitutional issues. Allen v. McCurry, 449 U.S. 90, 105, 101 S.Ct. 411, 420, 66 L.Ed.2d 308 (1980) (stating that nothing in the legislative history to Sec. 1983 supports the argument that a person claiming a federal right should have an unrestricted opportunity to relitigate in federal court issues already decided in state court; state courts have an obligation and the ability to uphold federal law); Huffman v. Pursue, Ltd., 420 U.S. 592, 611, 95 S.Ct. 1200, 1211, 43 L.Ed.2d 482 (1975) (rejecting the argument that "state judges will not be faithful to their constitutional responsibilities"). In addition, any other rule would result in a waste of judicial resources and unnecessary friction between state and federal courts. See Atlantic Coastline, 398 U.S. at 286, 90 S.Ct. at 1742; Pennzoil, 784 F.2d at 1142.
 
 
 11
 Although the federal district court may not exercise appellate jurisdiction over the judgment of a state court, a district court does have jurisdiction over a "general" constitutional challenge that does not require review of a final state court decision in a particular case. See Feldman, 460 U.S. at 482-86 & n. 16, 103 S.Ct. at 1314-17 & n. 16; Tofano v. Supreme Court of Nevada, 718 F.2d 313, 314 (9th Cir.1983). This distinction between a permissible general constitutional challenge and an impermissible appeal of a state court determination may be subtle, and difficult to make. See Feldman, 460 U.S. at 485, 103 S.Ct. at 1316 (quoting Doe v. Pringle, 550 F.2d at 597); Razatos v. Colorado Supreme Court, 746 F.2d 1429, 1433 (10th Cir.1984), cert. denied, 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985).
 
 
 12
 In Feldman, 460 U.S. at 486, 103 S.Ct. at 1316, the District of Columbia Court of Appeals had refused to admit Feldman to the District of Columbia bar, because he had not graduated from law school, a prerequisite to admission under the District's bar rules. Feldman filed a complaint in federal district court, claiming that the highest court in the district's refusal to admit him to the bar violated his constitutional rights.
 
 
 13
 The United States Supreme Court held that the federal district court had jurisdiction to determine the constitutionality of the district's bar rule, because such a determination did not require a review of "a state-court judgment in a particular case." Id.[1] However, the district court had no jurisdiction to review Feldman's constitutional challenge to the application of the bar rule in his particular case. See Feldman, 460 U.S. at 486-87, 103 S.Ct. at 1316-17.[2] The Supreme Court further explained that "[i]f the constitutional claims presented to a United States district court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the district court is in essence being called upon to review the state court decision." Id. at 483-84 n. 16, 103 S.Ct. at 1315 n. 16.
 
 
 14
 As the Tenth Circuit noted in Razatos, 746 F.2d at 1433, Feldman 's language does not provide a "bright line" rule to distinguish claims that are inextricably intertwined with a state court's decision from those that are not. The Razatos court concluded that claims are "inextricably intertwined" if the district court must "scrutinize not only the challenged rule itself, but the [state court's] application of the rule...." If, in order to resolve the claim, "the district court would have to go beyond mere review of the state rule as promulgated, to an examination of the rule as applied by the state court to the particular factual circumstances of [the plaintiff's] case," then the court lacks jurisdiction. See also Brown v. Board of Bar Examiners, 623 F.2d 605, 610 (9th Cir.1980) (because the plaintiff's complaint and requested relief involved an application of the challenged rule to his particular case, and would require a review of the state court decision, the court concluded that it lacked jurisdiction); Czura v. Supreme Court of South Carolina, 632 F.Supp. 267, 270 (D.S.C.1986) (same).
 
 
 15
 Robinson, 753 F.2d at 1472, contains this court's only detailed discussion of Feldman 's language. In that case, the issue was whether federal constitutional issues that the state court had refused to consider on a petition for rehearing should be deemed "inextricably intertwined" with the state court's judgment:
 
 
 16
 Faced with the task of deciding our power to review constitutional issues which arise from a state court proceeding, we view the res judicata requirement of full and fair opportunity to litigate, and the Feldman "inextricably intertwined" barrier as two sides of the same coin. Under the rubric of either "jurisdiction" or "res judicata," the crux of the question is whether there has already been actual consideration of and a decision on the issue presented. If consideration and decision have been accomplished, action in federal court is an impermissible appeal from the state court decision. If no consideration has been given, or any decision on the matter is ambiguous, it is unlikely that the issues presented to the state high court and to the federal court are so "inextricably intertwined" that the federal court cannot take jurisdiction. (citations omitted).
 
 
 17
 See also Randolph v. Lipscher, 641 F.Supp. 767, 781 n. 8 (D.N.J.1986) (arguing that application of a complex "inextricably intertwined" test is no longer necessary in light of Migra v. Warren City School District Board of Education, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); the court simply applies res judicata principles).
 
 
 18
 In the case before us, the California Superior Court considered and rejected the plaintiff's argument that the allegedly defamatory statements constitutionally were protected. It would be impossible for the federal court to review in the abstract the plaintiffs' constitutional challenge to the defamation verdict. The essence of the plaintiffs' constitutional claim is that the statements made at the Ministerial Conference and in the Pastor's Report were necessary to clarify Church divorce doctrines and to explain the McNair ecclesiastical determination, and that as a result the statements were privileged.
 
 
 19
 The plaintiffs argue that the allegedly defamatory remarks about Leona McNair constituted part of their religious beliefs. The district court could not evaluate the plaintiffs' constitutional claims without conducting a review of the state court's legal determinations and the jury's verdict.[3] The district court would be required to review the state court's decision regarding application of the plaintiffs' federal constitutional theories to the particular factual circumstances of this case. The district court may not do so. See Feldman, 460 U.S. at 486, 103 S.Ct. at 1316; Razatos, 746 F.2d at 1433.
 
 
 20
 We hold that the district court lacked subject matter jurisdiction over this case.[4] For this reason, we AFFIRM the district court's dismissal of the action.[5]
 
 
 
 *
 Hon. Donald S. Voorhees, United States District Judge for the Western District of Washington, sitting by designation
 
 
 [1]
 The courts of the District of Columbia, for this analysis, are the equivalent of state courts
 
 
 [2]
 The Supreme Court held that subject matter jurisdiction existed to consider claims that the rule created an irrebuttable presumption that only law school graduates are competent to practice law; that the rule discriminated against persons with equivalent legal training; and that it impermissibly delegated judicial power to the American Bar Association. The Court did not reach the issue of whether the doctrine of res judicata foreclosed litigation on these claims, leaving the determination to the district court. Feldman, 460 U.S. at 487, 490, 103 S.Ct. at 1317-18. The Court concluded that subject matter did not exist over claims that the District of Columbia Court of Appeals acted arbitrarily and capriciously in refusing to waive the bar rule in his case, and that the Court had discriminated by refusing to waive the rule in Feldman's case even though it had waived the rule in other cases. Id. at 486-87, 103 S.Ct. at 1316-17
 
 
 [3]
 We agree with the Second and Fifth Circuits that the Feldman doctrine should apply to state judgments even though state court appeals are not final. See Hale v. Harney, 786 F.2d 688, 691 (5th Cir.1986) ("We hold no warrant to review even final judgments of state courts, let alone those which may never take final effect because they remain subject to revision in the state appellate system."); Pennzoil, 784 F.2d at 1142-43 (arguing that any other rule would encourage forum shopping and provoke antagonism between state and federal courts)
 
 
 [4]
 Although on appeal, the parties did not raise this jurisdictional issue, we note tangential references to it in conjunction with Younger abstention arguments made in moving papers filed in the district court. This concern over the propriety of federal court review of state judgments is also apparent in Leona McNair's abstention arguments made on appeal, although not couched in jurisdictional terms
 In their Response to Defendant Superior Court's Motion to Dismiss, the plaintiffs relied upon Miofsky v. Superior Court, 703 F.2d 332 (9th Cir.1983) for the proposition that federal courts may enjoin state court judgments if constitutional issues are raised in a Sec. 1983 suit. However, this court decided Miofsky prior to the Supreme Court's opinion in Feldman. We therefore did not consider whether Miofsky 's constitutional challenges were inextricably intertwined with the state court's decision. See Miofsky, 703 F.2d at 334-35. Cases subsequent to Feldman make it clear that Feldman 's jurisdictional bar applies in the Sec. 1983 context, as elsewhere. See e.g., Curry v. Baker, 802 F.2d 1302, 1310 n. 5 (11th Cir.1986) (federal plaintiff sought prohibited appellate review of state court decision; fact that she sought relief under section 1983 does not confer jurisdiction); Hale v. Harney, 786 F.2d 688, 691 (5th Cir.1986) ("[L]itigants may not obtain review of state court actions by filing complaints about those actions in lower federal courts cast in the form of civil rights suits."); Pennzoil, 784 F.2d at 1144-45 (a Sec. 1983 case); Robinson, 753 F.2d at 1471-72 (same); Doe v. Pringle, 550 F.2d at 599 (plaintiffs cannot invoke Sec. 1983 to circumvent the requirement of seeking direct review in the United States Supreme Court); Lewis v. East Feliciana Parish School Board, 635 F.Supp. 296, 300 (M.D.La.1986) (same).
 
 
 [5]
 We therefore need not decide whether the district court erred in dismissing this action on abstention grounds, whether the issuance of and pending enforcement of the state court's judgment constitutes state action, or whether the California Superior Court is entitled to eleventh amendment immunity