827 F.2d 540
 Neil S. MacKAY, Sr., individually and as Guardian ad Litem
for Neil S. MacKay, Jr., a minor, Plaintiffs-Appellants,
v.
Caroline PFEIL, individually and as personal representative
of the Estate of Muriel Pfeil, Muriel C. Pfeil,
Marianne Pfeil, and Does I through XX,
inclusive, Defendants-Appellees.
 Nos. 85-3831, 85-4192.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 2, 1987.
Decided Sept. 4, 1987.
 
 Lance S. Spiegel, Beverly Hills, Cal., for plaintiffs-appellants.
 Gregory J. Motyka, and Russellyn S. Carruth, Anchorage, Alaska, for defendants-appellees.
 Appeal from the United States District Court for the District of Alaska.
 Before WALLACE, FLETCHER and BRUNETTI, Circuit Judges.
 PER CURIAM:
 
 
 1
 Neil MacKay appeals a grant of summary judgment against him in his causes of action for declaratory and injunctive relief from an Alaska state court judgment. Because the district court lacked subject-matter jurisdiction over these claims, we vacate its judgment and remand with instructions to dismiss.
 
 BACKGROUND
 
 2
 Neil MacKay and Muriel Pfeil were divorced in 1974. Custody of their son, Scotty, was awarded to Muriel. In 1976, Muriel was murdered in a car-bomb explosion. Following Muriel's death, Scotty's custody was litigated in Alaska Superior Court. Robert Pfeil, Muriel Pfeil's brother and the personal representative of her estate, and his wife, Marianne, sought custody, as did Scotty's father, Neil MacKay.[1] During the custody litigation Neil MacKay, in violation of a court order, took Scotty out of Alaska and fled to Likiep Island in the United States Trust Territories of the Pacific Islands. The estate of Muriel Pfeil bore the costs of locating Scotty and returning him to Alaska.
 
 
 3
 The custody litigation was terminated by a consent order and decree entered on June 30, 1978, awarding custody of Scotty to MacKay. MacKay, Scotty, and the Pfeil's were parties to the consent decree. In relevant part, the decree provided that "[t]he award of attorneys' fees and costs to [Scotty's] court appointed counsel shall be made by the court in the [then pending] estate matter," and that "the parties hereto have mutually agreed to release one another and their attorneys from any and all claims arising out of this litigation ..., expressly excluding however, any and all claims arising out of or effecting the Estates of Muriel A. Pfeil and/or SCOTTY MACKAY...."
 
 
 4
 With the conclusion of the custody litigation, the MacKay/Pfeil controversy began anew in the Alaska Superior Court proceedings, this time over the administration of Muriel Pfeil's estate. Scotty MacKay is the sole beneficiary of his mother's estate. Robert Pfeil, as the estate's representative, moved to obtain reimbursement from MacKay for, among other things, expenses borne by the estate in securing Scotty's return from the South Pacific and attorney's fees and costs in both the custody and the estate litigation. MacKay opposed this motion both on procedural grounds and on the merits, arguing that the court lacked personal jurisdiction over him and that the consent decree of June 30, 1978 precluded the estate's claim. The Alaska Superior Court determined that it had jurisdiction over MacKay, rejected MacKay's interpretation of the consent decree, and held that MacKay owed $141,982.62 to the estate. Judgment was entered December 8, 1981. On June 29, 1983, a default judgment in an action to enforce the December 8, 1981 judgment was entered by an Alaska Superior Court.
 
 
 5
 MacKay never appealed either of the Alaska court judgments. Rather, he filed a diversity action in federal district court seeking, inter alia, injunctive and declaratory relief.[2] Pfeil's motion for summary judgment was granted by the district court in an order filed April 14, 1985. Subsequently, the district court granted the defendants' motion for attorney's fees. MacKay timely noticed his appeals of the summary judgment (No. 85-3831) and the fee award (No. 85-4192).[3]
 
 DISCUSSION
 
 6
 We review the district court's grant of summary judgment de novo. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). Jurisdictional issues must be raised by this court sua sponte. Worldwide Church of God v. McNair, 805 F.2d 888, 890 (9th Cir.1986) (citing Solano v. Beilby, 761 F.2d 1369, 1370 (9th Cir.1985)). Where subject-matter jurisdiction is lacking, dismissal, not summary judgment, is the appropriate disposition. Demarest v. United States, 718 F.2d 964, 965 (9th Cir.1983) (citing Capitol Industries-EMI, Inc. v. Bennett, 681 F.2d 1107, 1118 (9th Cir.), cert. denied, 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 655 (1982)), cert. denied, 466 U.S. 950, 104 S.Ct. 2150, 80 L.Ed.2d 536 (1984). If a district court grants summary judgment in a case over which it does not have subject-matter jurisdiction, the court of appeals must vacate the judgment and remand with directions to enter a judgment of dismissal. Id.
 
 
 7
 An examination of the claims MacKay has appealed reveals that he is attempting to obtain federal review of a state court judgment. The relief sought is "a declaration that the Purported Judgment is void," and "orders restraining and enjoining the Defendants from seeking to enforce the Purported Judgment." Such relief is warranted, MacKay argues, because (1) the Alaska court in the estate proceedings lacked personal jurisdiction over him, rendering its judgment void; and (2) the judgment ordering the reimbursement to Muriel Pfeil's estate conflicts with the consent decree entered in the custody litigation.
 
 
 8
 The district court found that the Alaska court that entered the contested judgment decided both the jurisdictional defense and the substantive defense against MacKay, and, accordingly, that his federal claims are barred by the doctrine of res judicata. Summary judgment was granted to the defendants on this basis. We find, however, a related but more fundamental flaw in MacKay's claims for injunctive and declaratory relief: the district court was without subjectmatter jurisdiction over these causes of action.
 
 
 9
 Federal district courts, as courts of original jurisdiction,[4] may not serve as appellate tribunals to review errors allegedly committed by state courts. Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 296, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970) ("[L]ower federal courts possess no power whatever to sit in direct review of state court decisions."). The Supreme Court long ago defined the difference between original proceedings, over which federal district courts have jurisdiction, and those proceedings that are only attacks on correctness of a state court's judgment, over which they do not:
 
 
 10
 The question presented with regard to ... jurisdiction ... is, whether the proceeding ... is or is not in its nature a separate suit, or whether it is a supplementary proceeding so connected with the original suit as to form an incident to it, and substantially a continuation of it. If the proceeding is merely tantamount to the common-law practice of moving to set aside a judgment for irregularity, or to a writ of error, or to a bill of review or an appeal, it would belong to the latter category, and the United States court could not properly entertain jurisdiction of the case. Otherwise, the Circuit Courts of the United States would become invested with power to control the proceedings in the State courts, or would have appellate jurisdiction over them in all cases where the parties are citizens of different States. Such a result would be totally inadmissible.
 
 
 11
 On the other hand, if the proceedings are tantamount to a bill in equity to set aside a decree for fraud in the obtaining thereof, then they constitute an original and independent proceeding, and according to the doctrine laid down in Gaines v. Fuentes (92 U.S. [2 Otto] 10 [23 L.Ed. 524] the case might be within the cognizance of the Federal courts. The distinction between the two classes of cases may be somewhat nice, but it may be affirmed to exist. In the one class there would be a mere revision of errors and irregularities, or of the legality and correctness of the judgments and decrees of the State courts; and in the other class, the investigation of a new case arising upon new facts, although having relation to the validity of an actual judgment or decree, or the party's right to claim any benefit by reason thereof.
 
 
 12
 Barrow v. Hunton, 99 U.S. (9 Otto) 80, 82-83, 25 L.Ed. 407 (1878); cf. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 175, 2 L.Ed. 60 (1803) ("It is the essential criterion of appellate jurisdiction, that it revises and corrects the proceedings in a cause already instituted, and does not create that cause.").
 
 
 13
 In Barrow, the plaintiff had filed a petition in state court to nullify a state court judgment against him, claiming that he had not been served with process and that he had been discharged as a bankrupt. The defendant removed the action to federal court on the basis of diversity of citizenship. The Supreme Court, applying the above quoted analysis, found that "the proceeding ... was one that affected the mere regularity of the original judgment," rendering removal improper for lack of jurisdiction. 99 U.S. (9 Otto) at 83, 85.
 
 
 14
 As in Barrow, MacKay attacks the state court judgment for lack of personal jurisdiction and as erroneous due to the existence of a substantive defense. And, as in Barrow, MacKay's case is "substantially a continuation" of the state court proceedings. Id. at 82. To find that the district court had jurisdiction would lead to the "totally inadmissible" result that lower federal courts "would have appellate jurisdiction over [state court proceedings] in all cases where the parties are citizens of different States." Id. at 83.
 
 
 15
 Modern cases in which parties attempt to secure review of state court decisions by invoking federal diversity jurisdiction are few.[5] The problem of lack of jurisdiction for want of "originality" has arisen more frequently in cases where jurisdiction is claimed under the "federal question" or civil rights provisions, 28 U.S.C. Secs. 1331, 1341.[6] The most notable case in this area is the Supreme Court's decision in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Plaintiffs in Feldman challenged, on Fifth Amendment and federal antitrust grounds, the District of Columbia Court of Appeals' denial of their petitions to waive bar-admission rules.[7] Because "a United States District Court has no authority to review final judgments of a state court in judicial proceedings," the Court held that "to the extent that [the plaintiffs] sought review in the District Court of the District of Columbia Court of Appeals' denial of their petitions ..., the District Court lacked subject-matter jurisdiction over their complaints."[8] Id. at 482, 103 S.Ct. at 1315.
 
 
 16
 Feldman formed the basis of this court's recent opinion in Worldwide Church of God v. McNair, 805 F.2d 888 (9th Cir.1986). In Worldwide Church, plaintiffs brought an action under 42 U.S.C. Sec. 1983 seeking injunctive and declaratory relief from a state trial-court verdict and judgment, which they alleged violated the Constitution. The district court dismissed the case on Younger abstention grounds.[9] This court affirmed the dismissal, but because "[t]he United States District Court, as a court of original jurisdiction, has no authority to review the final determinations of a state court in judicial proceedings," 805 F.2d at 890, the affirmance was based on the district court's lack of subject-matter jurisdiction.[10]
 
 
 17
 Similarly, in Robinson v. Ariyoshi, 753 F.2d 1468, 1472 (9th Cir.1985), vacated on other grounds, --- U.S. ----, 106 S.Ct. 3269, 91 L.Ed.2d 560 (1986), we held that where "there has already been actual [state court] consideration of and a decision on the issue presented[,] ... action in federal court is an impermissible 'appeal' from the state court decision." In Robinson, because the state court had refused to consider plaintiff's constitutional claims, we held that the district court, in determining these claims, was not acting in an appellate capacity and thus did have subject-matter jurisdiction. Id. at 1473.
 
 
 18
 Unlike the situation in Robinson, the issues raised in MacKay's first and sixth claims have been considered and decided by a state court. MacKay requests "a mere revision of errors and irregularities, or of the legality and correctness" of the state court judgment, not "the investigation of a new case arising upon new facts." Barrow, 99 U.S. (9 Otto) at 83. MacKay's claims should be resolved by Alaska's appellate courts, not by a federal court of original jurisdiction.[11] It is thus clear that under Barrow, Feldman, and Worldwide Church, the district court was without subject-matter jurisdiction over MacKay's claims for declaratory and injunctive relief.[12]
 
 
 19
 Accordingly, in No. 85-3831, we VACATE the district court's order granting summary judgment on MacKay's first and sixth claims and REMAND the case with directions to enter an order dismissing those claims for lack of subjectmatter jurisdiction. In MacKay's appeal from the attorney's fees award, No. 85-4192, the district court's judgment is AFFIRMED.
 
 
 
 [1]
 Robert Pfeil has now also been murdered. Caroline A. Pfeil, sister of Muriel and Robert, is the successor personal representative of Muriel's estate
 
 
 [2]
 MacKay's complaint, in claims two through five, pled state law causes of action for abuse of process, tortious breach of contract, and interference with advantageous relationship, as well as indemnification for the estate proceedings judgment. The district court granted summary judgment on these counts as well as on the first and sixth claims, which were for declaratory and injunctive relief. Although MacKay does not mention his state law claims in his brief on appeal, he does argue generally that summary judgment was inappropriate because the Alaska state court decisions, which were attached to Pfeil's moving papers, were not authenticated or sworn to by affidavit. We find this argument, apart from its dubious merit, insufficient to preserve the appealability of the state law claims. It is true that in analyzing three of these four claims the district court found that summary judgment was warranted based on the res judicata effect of the Alaska judgments. However, the district court also held that each state law cause of action should be dismissed for reasons having nothing to do with matters referenced in the documents MacKay attacks. These reasons included, for example, the running of a statute of limitations and MacKay's failure to comply with Fed.R.Civ.P. 56(e). MacKay does not argue that the district court erred in granting summary judgment based on these alternative holdings. We therefore must conclude that MacKay has abandoned his right to appeal the grant of summary judgment on his state law claims. See Kates v. Crocker Nat'l Bank, 776 F.2d 1396, 1397 n. 1 (9th Cir.1985) (appellant deemed to have abandoned claim not addressed in brief); Simpson v. Union Oil Co., 411 F.2d 897, 900 n. 2 (9th Cir.1969) (issues referred to in "statement of the case" and "specifications of error" but not discussed in the briefs are deemed abandoned). Accordingly, the district court's disposition of the state law claims neither will be reviewed nor disturbed by this court
 
 
 [3]
 MacKay's appeal from the fee award is based on the assumption that this court will find that summary judgment was improperly granted by the district court. Although we hold that summary judgment was improperly granted, the reasons for our holding do nothing to undermine the propriety of the award of attorney's fees
 
 
 [4]
 See Rooker v. Fidelity Trust Co., 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923) ("The jurisdiction possessed by the District Courts is strictly original."); 28 U.S.C. Secs. 1330-1364
 
 
 [5]
 But such cases do exist. In Resolute Ins. Co. v. North Carolina, 397 F.2d 586 (4th Cir.), cert. denied, 393 U.S. 978, 89 S.Ct. 446, 21 L.Ed.2d 439 (1968), a diversity plaintiff's action was based on the assertion that a state court's decision was " 'grossly erroneous.' " Id. at 589. The Fourth Circuit found that district court had "original jurisdiction of the parties " under 28 U.S.C. Sec. 1332 (diversity jurisdiction), id. (emphasis added), but that dismissal was appropriate for lack of a justiciable controversy: "[Plaintiff seeks] to have a federal district court act in an essentially appellate capacity and review a state court decision alleged to be erroneous. The District Courts of the United States are not authorized and do not assume to exercise any such power." Id. The court apparently reasoned that the controversy was non-justiciable because the district court did not have the authority to decide it. We would use the designation "non-justiciable" for those cases involving problems, e.g., of mootness, standing, and ripeness, and characterize the problem present in Resolute Ins. Co. as lack of subject-matter jurisdiction
 
 
 [6]
 See also Sitton v. United States, 413 F.2d 1386, 1389 (5th Cir.1969) (holding that 28 U.S.C. Sec. 1345, which gives district courts original jurisdiction of civil actions where the United States is a plaintiff, "can in no way be interpreted as a grant to the district courts of the power to act in an appellate capacity to review the propriety of a state court decision"), cert. denied, 397 U.S. 988, 90 S.Ct. 1118, 25 L.Ed.2d 395 (1970)
 
 
 [7]
 Decisions of the courts of the District of Columbia, in this context, are treated as decisions of state courts. Worldwide Church of God v. McNair, 805 F.2d 888, 891 n. 1 (9th Cir.1986)
 
 
 [8]
 The Feldman plaintiffs also challenged the constitutionality of a bar-admission rule passed by the District of Columbia court pursuant to its rulemaking authority. The Court held that the district court did have subject-matter jurisdiction to pass on the constitutionality of the rule: "[B]ecause the proceedings giving rise to the rule are nonjudicial the policies prohibiting United States district court review of final state-court judgments are not implicated." District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486, 103 S.Ct. 1303, 1317, 75 L.Ed.2d 206 (1983)
 
 
 [9]
 See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)
 
 
 [10]
 Worldwide Church made clear that Feldman applies where, as in the instant appeal, the state-court decision under attack is not that of the state's highest court. See 805 F.2d at 893 n. 3
 
 
 [11]
 Of course, if MacKay took his case through the Alaska appellate system and claimed that the Alaska Superior Court violated his constitutional rights by rendering a judgment against him while lacking personal jurisdiction over him, he could petition the United States Supreme Court to review the opinion of Alaska's highest court. See 28 U.S.C. Sec. 1257
 
 
 [12]
 See also Anderson v. Colorado, 793 F.2d 262, 263-64 (10th Cir.1986); Hale v. Harney, 786 F.2d 688, 690-91 (5th Cir.1986); Reed v. Terrell, 759 F.2d 472, 473-74 (5th Cir.), cert. denied, 474 U.S. 946, 106 S.Ct. 343, 88 L.Ed.2d 290 (1985); Hagerty v. Succession of Clement, 749 F.2d 217, 219-20 (5th Cir.1984), cert. denied, 474 U.S. 968, 106 S.Ct. 333, 88 L.Ed.2d 317 (1985). See generally, Chang, Rediscovering the Rooker Doctrine: Section 1983, Res Judicata and the Federal Courts, 31 Hastings L.J. 1337 (1980) (a pre-Feldman article suggesting three reasons why Rooker v. Fidelity Trust Co., 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923), requires federal courts to dismiss claims arising from state-court judgments that would be barred by res judicata for lack of subject-matter jurisdiction: "(1) the Supreme Court's exclusive federal power of reviewing state court judgments; (2) the intent of Congress not to grant federal district courts appellate jurisdiction; and (3) the system-consistency of the district courts' power to review only original facts") (id. at 1359) (citations omitted); Comment: Federal Injunctive Relief Against Pending State Civil Proceedings, 44 La.L.Rev. 967, 986-989 (discussing Feldman )