887 F.2d 908
 CALIFORNIA SAVE OUR STREAMS COUNCIL, INC., Tehipite Chapter
of the Sierra Club, and Chukchansi Yokotch Tribe
of Madera County, Inc., Plaintiffs-Appellants,
v.
Clayton K. YEUTTER, Secretary of Agriculture,*
F. Dale Robertson, Director of the Forest Service,
Department of Agriculture, and Alternate
Energy Resources,
Defendants-Appellees.
 No. 88-2511.
United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 7, 1989.
Decided Oct. 4, 1989.
 
 Glenn M. Kottcamp, Nevada City, Cal., for plaintiffs-appellants.
 D. Robert Buechel, Jr., LeBoeuf, Lamb, Leiby & MacRae, San Francisco, Cal., for defendant-appellee Alternate Energy Resources, Inc.
 Elizabeth Ann Peterson, Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California.
 Before POOLE, REINHARDT and O'SCANNLAIN, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 California Save Our Streams Council, the Tehipite Chapter of the Sierra Club, and the Chukchansi Yokotch Tribe (collectively "SOS") appeal the district court's grant of summary judgment. We hold that the trial court correctly determined that 16 U.S.C. Sec. 825l (b) confers exclusive jurisdiction in the courts of appeals and bars suit in district court.
 
 Background
 
 2
 On March 7, 1984, Dale L.R. Lucas, president of Alternative Energy Resources, filed an application with the Federal Energy Regulatory Commission (FERC) for a license to construct and operate the Lewis Fork Creek hydroelectric power facility in the Sierra National Forest.[1] FERC accepted the application and, on April 8, 1985, issued public notice of the proposed project. Notice, published in both the Federal Register and the Madera (CA) Tribune, set a deadline of June 6, 1985 for intervention. None of the plaintiffs in this case intervened in the FERC proceedings before the expiration of the June deadline.
 
 
 3
 Concurrent with the publication of the proposed action, FERC sought a section 4(e) letter from the Forest Service. Section 4(e) of the Federal Power Act (FPA) requires FERC to solicit and accept conditions promulgated by the agency responsible for the protection and utilization of the land. 16 U.S.C. Sec. 797(e). See Escondido Mutual Water Co. v. La Jolla Band of Mission Indians, 466 U.S. 765, 772, 104 S.Ct. 2105, 2110, 80 L.Ed.2d 753 (1984). On December 17, 1986, the Forest Service, the agency responsible for the protection of the Sierra National Forest, simultaneously issued a 4(e) letter to FERC and a Finding of No Significant Impact (FONSI). The 4(e) conditions contained fourteen affirmative limitations on the proposed license.
 
 
 4
 In January, 1987, appellants filed for administrative review of the Forest Service's decision. Two months later, they also sought late intervention in the FERC proceedings. FERC, noting that appellants had both constructive and actual notice of the proposed action in 1985, denied late intervention. The Forest Service, for its part, amended its 4(e) conditions by adding three new requirements and, subsequently, in a letter to appellants, reaffirmed its approval of the Lewis Fork Creek project. On August 20, 1987, only two days after receiving the revised 4(e) conditions, FERC issued the license.
 
 
 5
 Appellants promptly filed a complaint in district court, seeking injunctive and declaratory relief against Alternative Energy Resources and the Forest Service. Simultaneously, SOS continued to pursue its elusive remedies in the FERC administrative process, appealing the denial of late intervention to a FERC review board. In early 1988, after FERC affirmed its late intervention decision, appellants joined the Commission in its suit in district court. Defendants, claiming lack of subject matter jurisdiction, sought summary judgment. The motion for summary judgment was granted, and the plaintiffs filed a timely appeal.
 
 Analysis
 
 6
 The FPA authorizes FERC to issue licenses for the construction and operation of hydroelectric projects. 16 U.S.C. Sec. 797(e). Licenses may include, inter alia, conditions imposed by the Secretary with jurisdiction over the proposed site of the project. Under the FPA, FERC is required to accept, without modification, reasonable restrictions imposed by the Secretary. See Escondido, 466 U.S. at 772-79, 104 S.Ct. at 2110-14. In this case, appellants challenged the 4(e) conditions of the FERC license first in the administrative proceedings held by the Forest Service and then in district court. SOS and its coclaimants argued that the agency action violated the National Environmental Policy Act (NEPA) and the American Indian Religious Freedom Act (AIRFA) and that the district court had jurisdiction under 28 U.S.C. Secs. 1331, 1343, and 1362.[2] The district court determined, based upon the statutory language of the Federal Power Act (FPA), that Congress had vested exclusive jurisdiction in the Federal Courts of Appeals. The court held that since Congress had provided an exclusive remedy in the circuit court for challenges to a FERC license, all plaintiffs must follow that route alone. See General Finance Corp. v. FTC, 700 F.2d 366, 368 (7th Cir.1983).
 
 
 7
 To determine whether the district court acted properly in concluding that it lacked subject matter jurisdiction, we must first look to the relevant statutory language. See Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). Section 313(b) of the FPA provides, in relevant part:
 
 
 8
 Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States Court of Appeals.... Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part.
 
 
 9
 By its express language, the Act provides exclusive jurisdiction for the Courts of Appeals to review and make substantive modifications to FERC licensing orders. Since it is a basic canon of statutory construction that Congress intended to give its words their ordinary meaning, see Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979); 3 C. Sands, Statutes and Statutory Construction Sec. 46.01 (4th ed. 1972), we are obligated to assume that when Congress said exclusive it meant exactly that. Given Congress's careful choice of words, there can be little room for argument over whether the statutory scheme vests sole jurisdiction over questions arising under the FERC licenses in the Courts of Appeals.
 
 
 10
 Moreover, beyond the clear language, there is an obvious statutory purpose underlying the jurisdictional scheme. Jurisdiction to review agency decisions is generally vested in the courts of appeals. See Stein, Mitchell & Mezines, 5 Administrative Law Sec. 45.04. The purpose of by-passing the district court is to avoid the redundancy of compiling separate records before the agency and the trial court. See Florida Power & Light Co. v. Lorion, 470 U.S. 729, 740, 105 S.Ct. 1598, 1605, 84 L.Ed.2d 643 (1985). Exclusive review provisions avoid the duplication of district and appellate review which crowds the timely and efficient disposition of administrative decisions. Id. (quoting Harrison v. PPG Industries, Inc., 446 U.S. 578, 593, 100 S.Ct. 1889, 1898, 64 L.Ed.2d 525 (1980)) ("[t]he most obvious advantage of direct review by a court of appeals is the time saved compared to review by a district court, followed by a second review on appeal").
 
 
 11
 Although the parties have not pointed us to any cases construing this particular statute or its legislative history, in this case, we need no such pointers. Administrative review provisions, including the FPA, are modeled on the prototypical administrative statute, the Federal Trade Commission Act. See Davis, Administrative Law Sec. 23.02. Federal courts have generally construed the review provisions of that Act and its progeny in the manner outlined above. See Forelaws on Bd. v. Johnson, 709 F.2d 1310 (9th Cir.1983); City of Rochester v. Bond, 603 F.2d 927 (D.C.Cir.1979).
 
 
 12
 Appellants contend, however, that the exclusive review provisions of the FPA are inapplicable here because their suit was filed against the Forest Service and arose under the provisions of NEPA and AIRFA. In effect, appellants argue that they are not attacking the licensing decision made by FERC but instead are seeking review only of the Forest Service's failure to follow the procedural and substantive steps outlined in statutes outside the purview of power and energy regulation. Consequently, since the claim arises under NEPA and AIRFA and not under the FPA, SOS claims an independent statutory basis for district court jurisdiction.
 
 
 13
 We find this argument unpersuasive. In essence, appellants seek, through careful pleading, to avoid the strict jurisdictional limits imposed by Congress. There are three significant flaws in appellants' argument. First, when two jurisdictional statutes draw different routes of appeal, the well-established rule is to apply only the more specific legislation. See 1A C. Sands, Statutes and Statutory Construction Sec. 23.16 (4th ed. 1972). "[T]he rule that a precisely drawn, detailed statute pre-empts more general remedies" flows from the Congressional intent to carve out from the broader scheme a specific exception for this particular type of claim. Block v. North Dakota ex rel. Bd. of Univ. and School Lands, 461 U.S. 273, 285, 103 S.Ct. 1811, 1818, 75 L.Ed.2d 840 (1983). To read the specific--and independently complete--statute as only supplementary to the more general legislation would render "nugatory" the carefully crafted scheme of review. Id. Here, the specific jurisdictional provisions of the FPA which expressly govern review of disputes concerning the licensing of hydroelectric projects control over the general and widely applicable procedures that regulate NEPA, AIRFA and other statutory challenges.
 
 
 14
 Second, although appellants seek to characterize the proceedings as an attack on the Forest Service's actions, it is clear that the suit is an attempt to restrain the licensing procedures authorized by FERC. The 4(e) conditions imposed by the Service have no significance outside the licensing process, and we do not believe that the jurisdictional remedy prescribed by Congress hangs on the ingenuity of the complaint. "The choice of forum is ... for Congress and we cannot imagine that Congress intended the exclusivity vel non of statutory review to depend on the substantive infirmity alleged." Bond, 603 F.2d at 936. Ultimately, appellants object to the proposed conditions only because they are included in the FERC license. Thus, even if they attempt to style this as an independent claim against the Forest Service, the practical effect of the action in district court is an assault on an important ingredient of the FERC license.
 
 
 15
 Third, as a practical matter, appellants' approach would result in substantial disruption of the statutorily mandated licensing procedure. After the license applicant had initially fought his way through the administrative proceedings, he would then have to grind through the district court and, almost certainly, through the appeal as of right to the circuit court. Moreover, nothing would bar the license opponents from challenging separate parts of the license both in a trial court and, at some later point, in a court of appeals. The point of creating a special review procedure in the first place is to avoid duplication and inconsistency. It provides a single and expeditious procedure for resolving licensing disputes. Appellants' theory would resurrect the very problems that Congress sought to eliminate. We do not believe, just as the District of Columbia Circuit in Bond did not believe, that Congress would involuntarily create a glaring loophole that would undermine the efficacy of the expedited process it adopted. Bond, 603 F.2d at 936.
 
 
 16
 Even while conceding that their attack on the Forest Service's conditions would frustrate the goal of efficient review, appellants contend that relegating them to the courts of appeals would deny them any reasonable opportunity to challenge the 4(e) conditions. Certainly, we would not ordinarily read a statute, absent the clearest of Congressional intentions, to deny an effective forum to challenge an agency decision. See Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 106 S.Ct. 2133, 2135-36, 90 L.Ed.2d 623 (1986); Wallace v. Christensen, 802 F.2d 1539, 1542 (9th Cir.1986) (en banc). However, we do not think that appellants who seek initial review in a court of appeals are precluded from raising an effective challenge to 4(e) conditions. In Escondido, the Supreme Court clearly envisioned that the courts of appeals would be able to review all aspects of the licensing procedure. "[T]he license applicant can seek review of the conditions in the court of appeals, but the court is to sustain the conditions if they are consistent with law and supported by the evidence presented to the Commission, either by the Secretary or other interested parties." Escondido, 466 U.S. at 778 n. 20, 104 S.Ct. at 2113 n. 20. We interpret the language of Escondido, as well as the statutory scheme, to mean that interested parties may challenge the legality of the 4(e) conditions--including their conformity to NEPA and AIRFA--in the circuit courts. Since the administrative record compiled in the FERC proceeding does include documentation collected during the Forest Service's hearings, there is a firm foundation for an appellate court to analyze the statutory claims. Consequently, since the FPA funnels all challenges to the courts of appeals and these courts are properly constituted to hear all relevant arguments, we hold that the district court lacked jurisdiction to review appellants' claims.
 
 Conclusion
 
 17
 Despite the fact that the district court correctly found that it lacked subject matter jurisdiction over the dispute, the court entered summary judgment for the defendants. Summary judgment is an inappropriate disposition when the district court lacks jurisdiction. MacKay v. Pfeil, 827 F.2d 540, 543 (9th Cir.1987). Consequently, we vacate the judgment and remand the case with directions for the district court to dismiss the action. Id.
 
 
 18
 REVERSED AND REMANDED FOR ENTRY OF AN ORDER OF DISMISSAL.
 
 
 
 *
 Clayton K. Yeutter is substituted for his predecessor Richard Lyng, Secretary of Agriculture, pursuant to Fed.R.App.P. 43(c)(1)
 
 
 [1]
 Mr. Lucas was not named in the suit filed in district court and is not a party to this appeal
 
 
 [2]
 Section 1331 is the general subject matter jurisdiction statute covering questions arising under federal law. Section 1343 affects civil rights issues, and section 1362 is a jurisdictional statute specifically limited to actions brought by Indian tribes