**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMERICAN BIRD CONSERVANCY;
FOREST CONSERVATION COUNCIL;
CONSERVATION COUNCIL FOR
HAWAII,

　　　　*Plaintiffs-Appellants,*

　　　　　　v.

FEDERAL COMMUNICATIONS
COMMISSION,

　　　　*Defendant-Appellee.*

No. 06-15429

D.C. No.
CV-05-00461-DAE

OPINION

Appeal from the United States District Court
for the District of Hawaii
David A. Ezra, District Judge, Presiding

Argued and Submitted
November 2, 2007—Honolulu, Hawaii

Filed October 6, 2008

Before: Diarmuid F. O'Scannlain, A. Wallace Tashima, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge O'Scannlain

14163

**COUNSEL**

Steven Sugarman, Santa Fe, New Mexico, argued the cause for the plaintiffs-appellants and filed the briefs; Alletta Belin, Santa Fe, New Mexico, Paul H. Achitoff and Isaac H. Morikawe, Earthjustice, were on the briefs.

Michael T. Gray, Attorney, U.S. Department of Justice, Washington, D.C., argued the cause for the defendant-

appellee and filed the brief; Sue Ellen Wooldridge, Assistant Attorney General, Kristen Byrnes Floom and Lisa E. Jones, Attorneys, U.S. Department of Justice, were on the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether an environmental group may employ the citizen-suit provision of the Endangered Species Act to challenge a Federal Communications Commission decision to issue licenses for seven communications towers in Hawaii.

### I

### A

Congress enacted the Communications Act in 1934, 47 U.S.C. § 151 *et seq.*, at the dawn of the radio age. The Act created the Federal Communications Commission ("FCC"), which was charged with ensuring the availability of "a rapid, efficient, Nation-wide, and world-wide wire and radio communication service . . . at reasonable charges." 47 U.S.C. § 151. As part of its responsibilities, the FCC was given the authority to "grant construction permits and station licenses" to owners of radio towers upon written application. *Id.* § 308(a).

The FCC's authority, like that of all federal agencies, is cabined by the Endangered Species Act of 1973 ("ESA"), which is designed to protect endangered and threatened wildlife. As part of this mandate, the ESA requires all federal agencies to ensure that "any action authorized . . . by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species." 16 U.S.C.

§ 1536(a)(2). To that end, the ESA "imposes a procedural consultation duty whenever a federal action may affect an ESA-listed species." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 790 (9th Cir. 2005). Specifically, "a Federal agency shall consult with the Secretary [of the Interior]" if an applicant for a permit or a license "has reason to believe that an endangered species or a threatened species may be present in the area affected by his project." 16 U.S.C. § 1536(a)(3). After consultation, the Secretary must provide a written opinion "detailing how the agency action affects the species or its critical habitat." *Id.* § 1536(b)(3)(A).

The Communications Act and the Endangered Species Act provide separate avenues to obtain judicial review of an agency's failure to comply with its statutory obligations. Section 402(a) of the Communications Act and the Hobbs Act, 28 U.S.C. § 2342, vest the federal courts of appeals with "exclusive" subject matter jurisdiction over actions to "enjoin, set aside, annul, or suspend any order of the [Federal Communications] Commission." 47 U.S.C. § 402(a); *see also* 28 U.S.C. § 2342. A claim under these provisions must be brought "within 60 days after" the entry of the order. 28 U.S.C. § 2344. In contrast, the citizen-suit provision of the ESA grants the district courts subject matter jurisdiction over suits by "any person . . . to enjoin any person, including the United States . . . who is alleged to be in violation of any provision [of the ESA]." 16 U.S.C. § 1540(g). Before filing suit under this provision, the plaintiff must give "written notice of the violation" to the Secretary and wait sixty days. *Id.* § 1540(g)(2)(A)(i). These two jurisdictional provisions form the core of this appeal.

B

Between 1996 and 2001, operators of seven communications towers on the Hawaiian islands of Kaua'i and Hawai'i submitted registration applications to the FCC. As part of the registration process, the applicants filled out a standard FCC

questionnaire that asked whether a "Commission grant of this application may have a significant environmental impact." A "yes" answer would trigger further investigation. A "no" answer would automatically end the FCC's inquiry into the environmental effects produced by the communications towers. All seven applicants answered "no." The FCC granted all seven applications without further inquiry.

On April 9, 2004, American Bird Conservancy ("American Bird"), a nonprofit organization dedicated to "conserv[ing] native wild birds and their habitats throughout the Americas," filed a "Petition for National Environmental Policy Act Compliance" with the FCC. American Bird alleged that the towers were killing two threatened or endangered species of seabirds: the Hawaiian petrel and the Newall's shearwater. It contended that the FCC had failed to comply with its statutory obligation to consult with the Secretary of the Interior before registering the towers. In a "Notice of Violations Under the Endangered Species Act" filed simultaneously with the Secretary, American Bird threatened to file a citizen suit under § 1540(g) of the ESA if the FCC's administrative process produced an unsatisfactory result.

On May 3, 2004, the FCC responded to American Bird's petition by "requesting [from the tower owners] an updated, current list of threatened and endangered species for each of the tower sites." The FCC also asked the tower owners to prepare "biological assessments" and to transmit them both to the FCC and to the Fish and Wildlife Service ("FWS"). The FWS subsequently requested that the FCC initiate formal consultation with the tower owners. As of this writing, the FCC had not yet commenced such consultation, but had encouraged the development of a proposal for programmatic consultation.

While the administrative process was pending, American Bird brought suit in the United States District Court for the District of Hawaii against the FCC under the citizen-suit provision of the ESA. As in the administrative proceedings,

American Bird contended that the FCC had not complied with its statutory obligation to consult with the Secretary of the Interior when it granted the registration applications for the seven communications towers. In addition, American Bird argued that "the FCC impermissibly delegated to licensees, applicants, and tower companies its responsibility under . . . the Endangered Species Act." American Bird sought to "[e]njoin [the FCC] from delegating full responsibility for determining the extent to which communication towers may affect threatened and endangered species to tower owners."

The FCC moved to dismiss for lack of subject matter jurisdiction, arguing that American Bird was challenging an "order of the Commission" within the meaning of § 402(a) of the Communications Act and that the court of appeals therefore had exclusive jurisdiction over the action. According to the FCC, the specific jurisdictional provision contained in the Communications Act "trumps" the more general citizen-suit provision of the ESA.

The district court agreed with the FCC, concluding that American Bird's claim fell within the terms of § 402(a) of the Communications Act and § 2342 of the Hobbs Act. Because those statutes provide for "exclusive" review in the courts of appeals, the district court dismissed the action for lack of subject matter jurisdiction. This timely appeal followed.

II

We have a narrow question to decide: did the district court have subject matter jurisdiction over American Bird's claim under the citizen-suit provision of the Endangered Species Act?

A

[1] The "beginning point" of statutory interpretation "must be the language of the statute." *Estate of Cowart v. Nicklos*

*Drilling Co.*, 505 U.S. 469, 475 (1992). The Communications Act provides that "[a]ny proceeding to enjoin, set aside, annul, or suspend *any order* of the Commission . . . shall be brought as provided [by the Hobbs Act]." 47 U.S.C. § 402(a) (emphasis added). The Hobbs Act, in turn, vests the courts of appeals with "exclusive jurisdiction" to review "all final orders of the Federal Communications Commission." 28 U.S.C. § 2342. Read together, the two statutes plainly require that any suit challenging a "final order" made by the FCC must be brought in the appropriate federal court of appeals.

**[2]** The structure of the Communications Act confirms that a "license" may constitute an "order." Section 402(a), which generally funnels challenges to the courts of appeals, exempts from its requirements those orders appealable under § 402(b), which lists nine categories which *may* be challenged in the United States Court of Appeals for the District of Columbia. One of the categories listed in § 402(b) includes cases involving "station license[s]." 47 U.S.C. § 402(b)(1); *see also id.* § 402(b)(6). We are satisfied that a "station license" is analogous to a communications tower registration, and that the tower registrations at issue here constitute "orders" within the meaning of the Communications Act.

**[3]** American Bird, however, carefully disclaims any intent to challenge the tower registrations themselves; instead, it attempts to cast this case as an objection solely to the FCC's *failure to consult* with the Secretary before granting the tower registrations. American Bird thus characterizes this case as involving a "failure to act" claim rather than a challenge to a "final order." In response, the FCC contends that despite American Bird's artful pleading, its core objections are to the tower registrations themselves and to the FCC's policy of delegating to applicants its responsibilities under the ESA.

**[4]** We agree with the FCC. American Bird does not object to the agency's failure to consult in the abstract; rather, it identifies seven discrete tower registrations that it alleges

were not supported by adequate environmental investigation. The tower registrations are therefore inextricably intertwined with the FCC's obligation to consult with the Secretary. American Bird recognizes as much; in its notice of filing suit, it stated that it would "file litigation to enforce [the ESA's] requirements should the FCC continue to authorize operation of *the subject structures* in an unlawful manner" (emphasis added). American Bird cannot elude the Communications Act's exclusive review provision by disguising its true objection to the tower registrations as a "failure to act" claim.[1]

**[5]** Our precedent confirms this conclusion. In analogous contexts, we have concluded that a plaintiff may not escape an exclusive avenue of judicial review through artful pleading. *California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908 (9th Cir. 1989), for example, involved an allegation that the Federal Energy Regulatory Commission ("FERC") failed to comply with a provision of the Federal Power Act when it issued a license to a hydroelectric power company. Though the Federal Power Act provides for "exclusive" jurisdiction in the courts of appeals for any claim based upon "an order issued by the Commission," 16 U.S.C. § 825*l*(b), the plaintiffs instead brought suit in federal district court under 28 U.S.C. § 1331, which grants general federal question subject matter jurisdiction to the district courts. As in this case, the appellants sought to dress up their core challenge to a licens-

---

[1]Incidentally, we are satisfied that the orders at issue here are "final." An order is final when it "mark[s] the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S. 154, 177 (1997) (internal quotation marks and citations omitted). The issuance of a tower registration constitutes the culmination of an administrative process that creates a legal right. No further administrative proceedings remain. *Cf. Reuters Ltd. v. FCC*, 781 F.2d 946, 947 n.1 (D.C. Cir. 1986) ("[F]inal orders are not limited to the last order issued in a proceeding, but to be final an order must impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process." (alteration in original) (internal quotation marks and citations omitted)).

ing decision as a failure to act claim instead. They contended "that they [were] not attacking the licensing decision made by FERC but instead [were] seeking review only of the . . . failure to follow the procedural and substantive steps outlined in statutes outside the purview of power and energy regulation." *Cal. Save Our Streams Council*, 887 F.2d at 911.

We rejected that contention, noting that "appellants seek, through careful pleading, to avoid the strict jurisdictional limits imposed by Congress." *Id.* We concluded that "when two jurisdictional statutes draw different routes of appeal, the well-established rule is to apply only the more specific legislation." *Id.* To hold otherwise would "render nugatory [Congress'] carefully crafted scheme of review." *Id.* (internal quotation marks omitted). Accordingly, we concluded that the district court lacked jurisdiction to hear the suit.

We reached a similar conclusion in *Turtle Island Restoration Network v. U.S. Department of Commerce*, 438 F.3d 937 (9th Cir. 2006). There, the National Marine Fisheries Service ("NMFS") re-opened a portion of a Hawaiian fishery that had previously been closed. Although the Magnuson Act provides jurisdiction over challenges to "regulations which implement a fishery management plan," 16 U.S.C. § 1855(f)(2), the plaintiffs instead invoked 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2201-02 (declaratory judgment and further relief), and 5 U.S.C. § 706 (Administrative Procedure Act), alleging violations of various federal environmental laws. We concluded that the district court correctly dismissed the complaint: "We agree with the district court that Turtle Island's claims, though 'framed . . . in terms of violations of the APA [and environmental statutes]' were 'in actuality . . . challenge[s] to the reopening of the Fishery.' "[2] *Turtle Island*, 438 F.3d at 938 (alterations in original).

---

[2]American Bird identifies dicta in *Turtle Island* suggesting that some "failure to act" claims may be brought under the citizen-suit provision of the ESA. Specifically, American Bird points to the following language:

**[6]** The reasoning of *California Save Our Streams* and *Turtle Island* is instructive. Like the plaintiffs in those cases, American Bird attempts to bypass Congress' carefully constructed system of review and the FCC's regulatory process by characterizing its suit as a challenge to the agency's compliance with federal environmental laws rather than to the agency's ultimate order. We cannot allow American Bird, "through careful pleading, to avoid the strict jurisdictional limits imposed by Congress." *Cal. Save Our Streams Council*, 887 F.2d at 911.**³** In any event, where one statute provides for exclusive jurisdiction in the courts of appeals and the other for general jurisdiction in the district courts, jurisdiction is generally proper in the courts of appeals. *See Nw. Res. Info. Ctr., Inc. v. Nat'l Marine Fisheries Serv.*, 25 F.3d 872, 875 (9th Cir. 1994).

B

American Bird also sees a "critical inconsistency" between the ESA's citizen-suit provision and the exclusive review provisions of the Communications Act and the Hobbs Act. Spe-

---

"[T]he regulatory challenge limitation would not encompass claims that NMFS failed to reinitiate consultation when the taking specified in the Incidental Take Statement is exceeded or a new species is listed or new information reveals effects of the action that may affect listed species . . . to an extent not previously considered in the biological opinion." *Turtle Island*, 438 F.3d at 949 (alteration in original) (internal quotation marks and citation omitted). This case, however, does not involve a "fail[ure] to reinitiate consultation" or to consider new information. Rather, American Bird alleges that the FCC's *past* failure to consult rendered the tower registrations unlawful. Like the actual claim at issue in *Turtle Island*, American Bird's challenge therefore is to a concrete, discrete "order."

**³**American Bird suggests that the lack of an agency record renders this case unfit for review. The proper remedy for an inadequate record, however, is to remand to the agency for further factfinding. *See FCC v. ITT World Comm'ns, Inc.*, 466 U.S. 463, 469 (1984). We also note that the administrative process that American Bird has initiated will presumably result in a record reviewable by this court.

cifically, American Bird points out that a plaintiff must *wait* sixty days before suing under the ESA, but must bring suit *within* sixty days when suing under the Communications Act. Because more than sixty days have passed since the registration applications were granted, American Bird argues that "review is unavailable under Section 402(a) even though the structure of the ESA indicates that the FCC's failure to comply with its ESA duties is cognizable in court."

The alleged inconsistency is an illusion. Our holding today does not foreclose future judicial review of the licensing decisions at issue here. Nothing prevents American Bird from continuing to pursue its claims through the FCC's administrative process, obtaining an adverse final order, and challenging *that* order in this court.[4] While we sympathize with American Bird's complaint that the FCC's administrative process moves at a "glacial" pace, such impatience does not provide a ground to ignore Congress' carefully crafted system of judicial review.

### III

Accordingly, the district court's judgment dismissing American Bird's action for lack of subject matter jurisdiction is

**AFFIRMED.**

---

[4]Indeed, American Bird has proven that it knows how to use the FCC's administrative process. In 2002, American Bird filed a petition with the FCC formally requesting that the FCC consult with the appropriate agency regarding towers in the Gulf Coast region. In 2005, the FCC issued an order denying in part, dismissing in part, and deferring in part American Bird's claims. In February 2008 the United States Court of Appeals for the District of Columbia Circuit vacated the FCC's order, bringing American Bird's claims to a successful conclusion. *American Bird Conservancy, Inc. v. FCC*, 516 F.3d 1027 (D.C. Cir. 2008).