**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE JASPER STEVENS and BRENDA
LOUISE MURRAY STEVENS,

*Debtors*,

No. 20-60044

BAP No.
19-1325

JASPER STEVENS; BRENDA LOUISE
MURRAY STEVENS,

*Appellants*,

OPINION

v.

ROBERT S. WHITMORE, Chapter 7
Trustee,

*Appellee.*

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Taylor, Faris, and Lafferty III, Bankruptcy Judges,
Presiding

Agued and Submitted September 2, 2021
Pasadena, California

Filed October 19, 2021

Before:  Sandra S. Ikuta, Mark J. Bennett, and
Ryan D. Nelson, Circuit Judges

Opinion by Judge R. Nelson

## SUMMARY[*]

### Bankruptcy

The panel affirmed the Bankruptcy Appellate Panel's decision affirming the bankruptcy court's approval of a settlement of a state court lawsuit filed by debtors against their mortgage servicing company.

While the state suit was pending, debtors filed for bankruptcy.  On a schedule that asked about claims against third parties, they stated they had none.  They listed the mortgage servicing company as a non-priority creditor, and they disclosed the state lawsuit in their Statement of Financial Affairs.  They also discussed the state lawsuit with the bankruptcy trustee.  The trustee determined there were no scheduled assets that would benefit the estate, and the bankruptcy court discharged the trustee and closed the case. Later, the mortgage servicing company contacted the bankruptcy trustee and offered to settle debtors' claims in the state lawsuit.  The trustee was reappointed by the bankruptcy court, took over the state lawsuit, settled it, and got the settlement approved by both the state court and the

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

bankruptcy court.   The settlement proceeds went to the bankruptcy estate, not the debtors.

The panel held that, under 11 U.S.C. § 554(c), at the end of bankruptcy proceedings, property that has not been otherwise administered can generally be abandoned to the debtor only if it has been "scheduled."  The panel held that § 554(c) requires property to be disclosed on a literal schedule under 11 U.S.C. § 521(a).  Thus, absent trustee or court action, property disclosed only on a statement, such as a Statement of Financial Affairs, cannot be abandoned under § 554(c).  Because the debtors listed the state lawsuit only on the Statement of Financial Affairs, and not on a schedule pursuant to § 521(a), they did not meet the requirements of § 544(c), and thus their interest was not abandoned. Accordingly, the bankruptcy court properly reappointed the trustee and approved the settlement.

**COUNSEL**

Kellam M. Conover (argued), Mark A. Perry, and Suria M. Bahadue, Gibson Dunn & Crutcher LLP, Washington, D.C., for Debtors-Appellants.

Douglas A. Plazak (argued), Reid & Hellyer, Riverside, California, for Appellee.

Tara Twomey, National Consumer Bankruptcy Rights Center, San Jose, California, for Amici Curiae National Consumer Bankruptcy Rights Center and National Association of Consumer Bankruptcy Attorneys.

**OPINION**

R. NELSON, Circuit Judge:

At the end of bankruptcy proceedings, property that has not been otherwise administered can generally be abandoned to the debtor only if it has been "scheduled." 11 U.S.C. § 554(c). A neighboring provision, § 521(a), requires debtors to file several schedules, as well as other statements. In this case, we must decide whether "scheduled" requires that property be listed on one of the literal schedules, or if listing it on one of the other statements can suffice. We hold that § 554(c) requires property to be disclosed on a literal schedule, and thus that, absent Trustee or court action, property disclosed only on a statement (e.g., the Statement of Financial Affairs) cannot be abandoned under § 554(c).

I

The property in question is the Debtors' interest in a state lawsuit that they filed against their mortgage servicing company. The lawsuit arose out of a conflict over the Debtors' mortgage and their efforts to refinance it. While their case was ongoing, the Debtors voluntarily filed for bankruptcy.

The issue here arose because the Debtors identified the state lawsuit in some of their filings but not in others. On a schedule that asked about claims against third parties, they stated that they had none, even though the lawsuit was still pending. *See* 11 U.S.C. § 521(a)(1)(B)(i); Official Form 106A/B, Schedule A/B: Property. And elsewhere on the same schedule, they also said that they had no other contingent or unliquidated claims.

On the other hand, the Debtors disclosed their mortgage itself: they listed the mortgage servicing company as a non-priority creditor. And they even disclosed the state lawsuit, although, importantly, only in the Statement of Financial Affairs ("SOFA," the filing under § 521(a)(1)(B)(iii)), and not in any of the schedules (separate filings under § 521(a)(1)(B)(i) and (ii)).

The Debtors also discussed the state lawsuit with the bankruptcy Trustee. He requested the litigation documents, which the Debtors sent him. After reviewing these documents, the Trustee certified that the estate "ha[d] been fully administered" and contained "no property available for distribution." The Trustee also determined "that there were no scheduled assets which would benefit [the] estate" and confirmed that he "made a diligent inquiry into the financial affairs of the debtor(s)." The bankruptcy court then discharged the Trustee and closed the case.

A couple of years later, after the Debtors had continued actively litigating their state lawsuit, the opposing party in that suit—the mortgage servicing company—contacted the bankruptcy Trustee directly. The company offered to settle the Debtors' claims for about ten times less money than the Debtors sought. The company asked the Trustee to reopen the bankruptcy case so that he could be reappointed, take over the state lawsuit, and settle it quickly. The Trustee was reappointed by the bankruptcy court, took over the state lawsuit, settled it, and got the settlement approved by both the state court and the bankruptcy court. Because the state lawsuit had not been abandoned (according to the bankruptcy court), the bankruptcy estate got the proceeds from the settlement, not the Debtors.

The Debtors appealed the bankruptcy court's approval of the settlement to the Bankruptcy Appellate Panel ("BAP").

It affirmed. *In re Stevens*, 617 B.R. 328 (B.A.P. 9th Cir. 2020). The BAP held that the word "scheduled" in § 554(c) "refers only to assets listed in a debtor's Schedules" (defined as "the schedule of assets and liabilities" under 11 U.S.C. § 521(a)(1)(B)(i)), that the state lawsuit had not been listed on a schedule, and thus that the Debtors' interest in the state lawsuit had not been abandoned under § 554(c). *Id*. at 332–34. The BAP observed that "the majority of courts considering the issue have taken the strict approach," and it followed "the majority's plain language reading of § 554(c)." *Id*. at 331–32. It also reasoned that its "narrow reading of § 554(c) is consistent with sound bankruptcy policies and reasonable expectations for a debtor's performance of statutory duties." *Id*. at 333.

## II

We have jurisdiction to consider appeals from final decisions of the BAP under 28 U.S.C. § 158(d)(1). We review the BAP's statutory interpretation de novo. *In re Boyajian*, 564 F.3d 1088, 1090 (9th Cir. 2009).

## III

In bankruptcy, "[a]bandonment is a term of art with special meaning." *Catalano v. C.I.R.*, 279 F.3d 682, 685 (9th Cir. 2002) (quotation marks omitted). Abandonment "is the formal relinquishment of the property at issue from the bankruptcy estate." *Id*. Unless property is abandoned, it "continues to belong to the bankruptcy estate and [does] not revert to" the Debtors. *Cusano v. Klein*, 264 F.3d 936, 945–46 (9th Cir. 2001); *see also* 11 U.S.C. § 554(d).

Absent circumstances not relevant here,[1] before it can be abandoned under § 554(c), property must be "scheduled under section 521(a)(1)." So the issue here is whether the state lawsuit was scheduled under that section.

Section 521(a)(1) mandates that debtors file several documents. As relevant here, it requires multiple schedules (in § 521(a)(1)(B)(i)–(ii)), as well as several other kinds of statements (in § 521(a)(1)(B)(iii), (v)–(vi)).

Courts have interpreted "scheduled" in two ways. Several bankruptcy courts and a district court have held that to be scheduled, property needs to be included on the "schedule of assets and liabilities."[2] 11 U.S.C. § 521(a)(1)(B)(i).[3] Others have held that to be scheduled, property just needs to be included on any one of the statutory filings from § 521(a), whether that filing is called a schedule or something else.[4] But, so far, no federal court of appeals has taken a side in a published opinion. *See, e.g.*, *Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 282 (2d Cir. 2019) ("We therefore leave for another day the question of whether an

---

[1] Property can also be abandoned if the Trustee or the court acts directly. 11 U.S.C. § 554(a), (b). But the Debtors did not argue that the property was abandoned under § 554(a) or (b).

[2] *See, e.g.*, *In re Winburn*, 167 B.R. 673, 676 (Bankr. N.D. Fla. 1993); *In re McCoy*, 139 B.R. 430, 432 (Bankr. S.D. Ohio 1991); *In re Fossey*, 119 B.R. 268, 272 (D. Utah 1990).

[3] Income would be scheduled on a different schedule, under § 521(a)(1)(B)(ii), but this case concerns property, not income.

[4] *See Bird v. Hart*, 616 B.R. 826, 829 (D. Utah 2020); *United States ex rel. Fortenberry v. Holloway Grp., Inc.*, 515 B.R. 827, 829 (W.D. Okla. 2014); *West v. Jeppesen (In re Krachun)*, No. 15-2016, 2015 WL 4910241, at *6 (Bankr. D. Utah Aug. 14, 2015).

asset disclosed to the bankruptcy court orally and on a SOFA, but not on a Schedule B, is abandoned to the debtor."); *but see id.* at 282 n.16 (noting that the Second Circuit, in an unpublished summary order, found that disclosure orally and on a SOFA "would *not* lead to abandonment by operation of law" under § 554(c)).

We reject the Debtors' "any filing" reading. Instead, we hold that, absent Trustee or court action, to be abandoned under § 554(c), property must be scheduled on a schedule, not just listed on the SOFA.

### A

Because "our inquiry begins with the statutory text, and ends there as well if the text is unambiguous," we start with the text of the Bankruptcy Code. *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (plurality opinion). And we read its words in context. *See City of Chicago, Illinois v. Fulton*, 141 S. Ct. 585, 590 (2021). Applying these interpretive rules to the statutory text, property listed only on the SOFA is not "scheduled" and thus, absent Trustee or court action, cannot be abandoned under § 554(c).

The Bankruptcy Code does not define "scheduled." *See* 11 U.S.C. § 101 (definitions). "When terms used in a statute are undefined, we give them their ordinary meaning." *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995). And we look to the ordinary meaning of the term when Congress enacted the statute. *See Perrin v. United States*, 444 U.S. 37, 42 (1979).

Congress enacted § 554(c) in 1978, Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, § 554, 92 Stat. 2549, 2603 (1978), and dictionaries from that time offered consistent definitions of "scheduled." Webster's defined "scheduled"

as "to place or include in a schedule" or "to make a schedule of." Webster's New World Dictionary 1272 (1972). And the Oxford Compact defined the verb "schedule" to mean "[t]o enter in a schedule or list." Oxford Compact Dictionary 203 (1971). These dictionary definitions show that the ordinary meaning of "scheduled" was to include something on a literal schedule. That ordinary meaning, taken with § 554(c)'s explicit cross-reference to § 521(a)(1), which itself also uses the noun "schedule," compels us to construe "scheduled" narrowly.

Our interpretation is bolstered by the "established canon of construction that similar language contained within the same section of a statute must be accorded a consistent meaning." *Nat'l Credit Union Admin. v. First Nat'l Bank & Tr. Co.*, 522 U.S. 479, 501 (1998). Section 554(c) refers to § 521(a)(1), which itself uses the nearly identical term "schedule." Because the one section refers to the other, for purposes of statutory interpretation, we read them together. *See United States v. Morton*, 467 U.S. 822, 828 (1984).

When we read a statute as a whole and see that it uses nearly identical terms in different places, we give those terms similar meanings. "Scheduled" is a verb, and "schedule" is a noun (as used in § 521(a)(1), anyway), but they share the same root. And the Supreme Court has noted that different grammatical forms of the same word "typically reflect the meaning of" one another. *Cf. FCC v. AT&T Inc.*, 562 U.S. 397, 402 (2011) (construing "person" and "personal"). "Where . . . Congress uses similar statutory language . . . in two adjoining provisions, it normally intends similar interpretations." *Nijhawan v. Holder*, 557 U.S. 29, 39 (2009). There's simply nothing about these words or the surrounding context to imply that Congress wanted them to mean different things.

Thus, given the ordinary meaning of "scheduled" and the statutory context, we must give "schedule" and "scheduled" similar meanings: scheduled means included on a schedule.

A neighboring provision further bolsters our reading. Section 523(a)(3) also uses the word "scheduled" and, just like § 554(c), cross-references § 521(a)(1). And, usefully for our purposes, § 523(a)(3) distinguishes between "list[ing]" and "schedul[ing]." "Undoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932). If we adopted the Debtors' reading, then "scheduled" would either mean something different in § 554(c) than it does in § 523(a)(3), violating the canon that identical words are presumed to have the same meaning, *see Atl. Cleaners & Dyers, Inc.*, 286 U.S. at 433, or "scheduled" in § 523(a)(3) would mean the same thing as "listed," violating the canon against surplusage, *see Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 106 (2011). Our reading avoids these interpretive difficulties.

Our reading also finds support in the broader Bankruptcy Code scheme. The Federal Rules of Bankruptcy Procedure routinely distinguish between the bankruptcy petition itself, bankruptcy schedules, the SOFA, and other documents. *See, e.g.*, Fed. R. Bankr. P. 1007. The Debtors' reading fails to account for the Rules' use of these different terms.

B

The Debtors argue that we should rely on the common law understanding of abandonment to conclude that property is not abandoned when the Trustee knows about it. *See, e.g.*, *In re Webb*, 54 F.2d 1065, 1067 (4th Cir. 1932). But Congress enacted the Bankruptcy Code, and we cannot

disregard its plain language. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). We hold that abandonment under § 554(c) requires listing on a schedule, as we have defined it here, and that anything else (e.g., actual knowledge of the trustee, ad hoc oral disclosures, discussion at the § 341 meeting of creditors) is not enough. "The law is abundantly clear that the burden is on the debtors to list the asset and/or amend their schedules, and that in order for property to be abandoned . . . the debtor must formally schedule" it. *Jeffrey v. Desmond*, 70 F.3d 183, 186 (1st Cir. 1995). No matter what the common law said before § 554(c) was enacted, "[i]t is not enough that the trustee learns of the property through other means; the property must be scheduled." *Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524, 526 (8th Cir. 1991).

IV

We conclude that property listed only on the SOFA, § 521(a)(1)(B)(iii), is not "scheduled," and thus without Trustee or court action, cannot be abandoned under § 554(c). We acknowledge that the Debtors' failure to list the state lawsuit on a schedule may have been an inadvertent oversight, but given the statute's plain text, we cannot consider equitable arguments. The Debtors could have amended their schedules "as a matter of course at any time before the case . . . closed." Fed. R. Bankr. P. 1009(a). But they didn't. Our task is to interpret the Bankruptcy Code, "not to balance the equities." *Zachary v. California Bank & Tr.*, 811 F.3d 1191, 1199 (9th Cir. 2016). Any "equitable powers remain in the bankruptcy courts . . . and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988). The Supreme Court has made this abundantly clear. *See Law v. Siegel*, 571 U.S. 415, 421 (2014) ("[I]n exercising

. . . statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions.").

Because the Debtors listed the state lawsuit only on the SOFA, and not on a schedule, pursuant to 11 U.S.C. § 521(a)(1)(B)(i) and (ii), they did not meet the requirements of § 554(c), and thus their interest was not abandoned.

**AFFIRMED.**