**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAUK-SUIATTLE INDIAN TRIBE, | No. 22-35000 |
| *Plaintiff-Appellant*, | D.C. No. 2:21-cv-01014-BJR |
| v. | |
| CITY OF SEATTLE; SEATTLE CITY LIGHT, a subdivision of the City of Seattle, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Western District of Washington
Barbara Jacobs Rothstein, District Judge, Presiding

Argued and Submitted October 7, 2022
Seattle, Washington

Filed December 30, 2022

Before: Mary H. Murguia, Chief Judge, and William A.
Fletcher and Mark J. Bennett, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge W. Fletcher;
Concurrence by Judge Bennett

## SUMMARY[*]

### Federal Power Act / Removal

The panel affirmed the district court's denial of the Sauk-Suiattle Indian Tribe's motion to remand to state court and the district court's dismissal, for lack of subject matter jurisdiction under the Federal Power Act, of the Tribe's action alleging that the City of Seattle's operation of the Gorge Dam without fish passage facilities, or fishways, violated certain federal and state laws.

The Gorge Dam is one of three dams that make up the Skagit River Hydroelectric Project. The Federal Energy Regulatory Commission issued an order granting Seattle a new license to operate the Project. The order contained no fishway requirement.

The Tribe sought (1) a declaration that the Gorge Dam violates the 1848 Act establishing the Oregon Territory and the 1853 Act establishing the Washington Territory ("Congressional Acts"), the Supremacy Cluse of the United States Constitution, and the Washington State Constitution; (2) an injunction that either prohibits Seattle from maintaining the Gorge Dam in its present condition or

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

requires Seattle to provide a fishway; and (3) other "just and equitable" relief.

The panel affirmed the district court's order denying the Tribe's motion to remand the action to state court. The panel held that the City properly removed the action to federal court under 28 U.S.C. § 1441(a) because the Tribe's right to relief depended on resolution of a substantial question of federal law. Applying a four-part test, the panel concluded that the Tribe's complaint necessarily raised federal issues because it expressly invoked federal laws, and it was uncontested that the federal issues were disputed. The question whether the Supremacy Clause and Congressional Acts governed Seattle's operation of the FERC-licensed Project implicated the federal government's strong interest in national regulation, and thus the issue was a substantial one. Finally, exercising jurisdiction would not disturb any congressionally approved balance of federal and state judicial responsibilities.

The panel also affirmed the district court's dismissal for lack of subject matter jurisdiction because the Tribe's complaint was subject to section 313(b) of the Federal Power Act, which vests exclusive jurisdiction in the federal courts of appeals over all objections to FERC orders by a party to a FERC proceeding. The panel concluded that the Tribe's complaint did not expressly challenge the FERC order granting Seattle a new license to operate the Project, but the gravamen of the complaint, that the Gorge Dam must have fishways, was a direct attack on FERC's decision that no fishways were required.

The panel held that the district court properly dismissed the action. 28 U.S.C. § 1447(c) provides: "If at any time before final judgment it appears that the district court lacks

subject matter jurisdiction, the case shall be remanded [to state court].”  The panel concluded that it was bound by the court's precedent establishing a futility exception to § 1447(c).  The panel concluded that the futility exception applied because there was absolute certainty that the state court would dismiss the action following remand for the same reason that the district court lacked jurisdiction:  section 313(b) of the Federal Power Act vested the federal courts of appeals with exclusive jurisdiction over the Tribe's action.

Judge W. Fletcher concurred in the result but did not concur fully in the reasoning of the majority's per curiam opinion.  He wrote that the question was not whether the district court was correct in its initial denial of the Tribe's motion to remand, but rather whether the district court was correct in its ultimate dismissal for lack of subject matter jurisdiction.  Judge W. Fletcher wrote that, absent the futility exception, once the district court correctly concluded that it did not have original subject matter jurisdiction, the required course would have been for the district court to remand the suit to the state court as improperly removed.  Judge W. Fletcher agreed with Judge Bennett both that dismissal was proper under the futility exception, and that the exception is based on a misinterpretation of the relevant statute.

Concurring, Judge Bennett, joined by Chief Judge Murguia and Judge W. Fletcher, wrote that the court's precedent required the panel to apply the futility exception to 28 U.S.C. § 1447(c)'s remand requirement.  Judge Bennett wrote that the futility exception does not comport with § 1447(c)'s plain text, and, in the appropriate case, the court should reconsider the futility exception en banc and abandon it.

**COUNSEL**

Jack Warren Fiander (argued), Towtnuk Law Offices LTD, Yakima, Washington, for Plaintiff-Appellant.

Kari L. Vander Stoep (argued), Elizabeth Thomas, and Christina A. Elles, K&L Gates LLP, Seattle, Washington, for Defendants-Appellees.

**OPINION**

PER CURIAM:

The City of Seattle/Seattle City Light[1] ("Seattle") owns and operates the Gorge Dam, which is part of the Skagit River Hydroelectric Project ("Project"). Seattle operates the Project pursuant to a thirty-year license that was issued by the Federal Energy Regulatory Commission ("FERC") in 1995. The Sauk-Suiattle Indian Tribe ("Tribe") sued Seattle in Washington state court, alleging that Seattle's operation of the Gorge Dam without fish passage facilities ("fishways") violates certain federal and state laws. Seattle removed the case to federal court. The district court denied the Tribe's motion to remand, finding that it had jurisdiction because the Tribe's complaint raised substantial federal questions. The district court then granted Seattle's motion to dismiss for lack of subject matter jurisdiction under the Federal Power Act ("FPA") and dismissed the complaint. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

---

[1] Seattle City Light is not a separate entity from the City of Seattle.

# I

## A

The Gorge Dam, located in Newhalem, Washington, is one of three dams that make up the Project. In 1927, FERC's predecessor licensed the Project for fifty years.[2] *See* Order Accepting Settlement Agreement, Issuing New License, and Terminating Proceeding ("FERC Order"), 71 FERC 61159, 61527 n.1 (1995).

Seattle applied for a new license in 1977, *id.*, and FERC allowed the Tribe, among others, to intervene in the proceedings, *id.* at 61528–29. The Tribe and other entities also engaged in settlement negotiations with Seattle regarding the Project. *Id.* at 61527 n.1, 61529. The negotiations resulted in several settlement agreements (collectively, "Settlement Agreement") that "purport[ed] to resolve all issues related to project operation, fisheries, wildlife, recreation and aesthetics, erosion control, archaeological and historic resources, and traditional cultural properties." *Id.* at 61527.

As relevant here, the Settlement Agreement included the "Fisheries Settlement Agreement," which the Tribe joined. *Id.* at 61529. "The Fisheries Settlement Agreement incorporate[d] the Anadromous Fish Flow Plan and the Anadromous and Resident Fish Non-Flow Plan and establishe[d] Seattle's obligations relating to fishery resources affected by the project, including numerous provisions to protect resident and migratory fish species." *Id.* at 61530. The Settlement Agreement also asked FERC

---

[2] For simplicity, we refer to both FERC and its predecessor, the Federal Power Commission, as "FERC" or "Commission."

to dismiss a separate proceeding that FERC had opened to "examine the effects of the project's flow regime on the Skagit River's fisheries resource." *Id.* at 61527.

In 1995, almost twenty years after Seattle submitted its application for a renewed license, FERC issued an order granting Seattle a new thirty-year license to operate the Project ("FERC Order").[3] *Id.* at 61527, 61538. The FERC Order incorporated into the new license all parts of the Settlement Agreement "over which [FERC had] jurisdiction" and as requested in the Settlement Agreement, terminated FERC's separate proceeding to examine the Project's effects on fishery resources. *Id.* at 61527–28.

The FERC Order also contained a section on "Fish Passage." *Id.* at 61535. In it, FERC explained that neither the Secretary of Commerce nor the Secretary of the Interior had prescribed a fishway under 16 U.S.C. § 811.[4] It also explained that both the Department of Commerce and the Department of the Interior were parties to the Settlement Agreement in which they had agreed "that all issues concerning environmental impacts from relicensing of the Project, as currently constructed, are satisfactorily resolved by [the Settlement Agreement]."[5] *Id.* at 61535 (internal

---

[3] After the license expired in 1977, FERC issued annual licenses authorizing Seattle to continue Project operations pending disposition of its application. *See* FERC Order, 71 FERC ¶ 61159, at 61527 n.1.

[4] That section provides in relevant part: "The Commission shall require the construction, maintenance, and operation by a licensee at its own expense of . . . such fishways as may be prescribed by the Secretary of the Interior or the Secretary of Commerce, as appropriate." 16 U.S.C. § 811.

[5] As noted, the Tribe was also a party to the Settlement Agreement. FERC Order, 71 FERC ¶ 61159, at 61528–29.

quotation marks omitted).  Thus, the FERC Order contained no fishway requirement.  FERC did however "reserve[] [its] authority to require fish passage in the future, should circumstances warrant."  *Id.*

The Tribe did not seek rehearing or appeal the FERC Order.

## B

In July 2021, the Tribe filed the operative amended complaint against Seattle in Washington state court, seeking only declaratory and injunctive relief under Washington's Declaratory Judgments Act.  The complaint alleged that the Gorge Dam "blocks the passage of migrating fish" and thus its "presence and operation" without fishways violates several laws: the 1848 Act establishing the Oregon Territory and the 1853 Act establishing the Washington Territory ("Congressional Acts");[6] the Supremacy Clause of the United States Constitution; the Washington State Constitution, which purportedly incorporates the Congressional Acts; and Washington nuisance and common law.  The complaint alleged that all these provisions prohibit dams, like the Gorge Dam, that block fish passage.

The complaint sought (1) a declaration that the Gorge Dam violates the Washington State Constitution, common law, and the Supremacy Clause because Seattle is subject to

---

[6] Section 12 of the Oregon Territory Act provided: "That the rivers and streams of water in said Territory of Oregon in which salmon are found . . . shall not be obstructed by dams or otherwise, unless such dams or obstructions are so constructed as to allow salmon to pass freely up and down such rivers and streams."  According to the Tribe, Section 12 was later incorporated into the laws of the Territory of Washington via Section 12 of the Washington Territory Act.

the Congressional Acts; (2) an injunction that either prohibits Seattle from maintaining the Gorge Dam in its present condition or requires Seattle to provide a fishway; and (3) other "just and equitable" relief.

## C

Seattle timely removed to federal court, and the district court denied the Tribe's remand motion.  The district court determined that it had jurisdiction under 28 U.S.C. §§ 1441(a) and 1331 because the complaint raised substantial federal questions: whether Seattle's actions violate the Congressional Acts and the Supremacy Clause. The district court also determined that because all the Tribe's claims "center on a single, discrete issue: whether [Seattle] may continue to operate the Gorge Dam in the absence of a passageway for fish," it had supplemental jurisdiction over the remaining state-law claims under 28 U.S.C. § 1367(a).

The district court then granted Seattle's motion to dismiss for lack of subject matter jurisdiction.  It found that the complaint was a collateral attack on the FERC Order because it challenged an issue decided by FERC: whether Seattle was required to construct Gorge Dam fishways.  And because only a federal court of appeals can review such challenges under section 313(b) of the FPA, 16 U.S.C. § 825*l*(b), the district court found that it lacked subject matter jurisdiction and dismissed the complaint.

The Tribe appeals from the district court's orders denying remand and granting the motion to dismiss. Pursuant to this court's order, the parties have also filed supplemental briefs on whether it was proper for the district court to dismiss the action considering 28 U.S.C. § 1447(c), which provides, in part: "If at any time before final judgment

it appears that the district court lacks subject matter jurisdiction, the case shall be remanded [to state court].”

## II

We review “issues of subject matter jurisdiction and denials of motions to remand removed cases de novo.” *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1315 (9th Cir. 1998). We also review “de novo . . . whether the district court had supplemental jurisdiction.” *Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003).

## III

### A[7]

The federal removal statute provides that “any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . may be removed by the defendant . . . to the district court of the United States.” 28 U.S.C. § 1441(a). District courts have original jurisdiction over “all civil actions arising under the Constitution, laws, or treaties of the United States.” 28 U.S.C. § 1331. Where, as here, state law creates the cause of action,[8] the action arises under federal law when “a well-

---

[7] Whether the district court correctly determined that removal was proper and denied the Tribe’s motion to remand is squarely before us, as the Tribe raises the issue and the parties have fully briefed it. *See Greenlaw v. United States*, 554 U.S. 237, 243 (2008) (“[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.”).

[8] As discussed above, the Tribe’s claims are brought under Washington’s Declaratory Judgments Act. We have treated such claims as state-law claims. *See Hornish v. King Cnty.*, 899 F.3d 680, 687–91 (9th Cir. 2018)

pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983). A substantial federal question exists when the question is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). All four requirements are met here.

As to the first two requirements, the Tribe's complaint necessarily raises federal issues because it expressly invokes federal laws, and it is uncontested that the federal issues are disputed. The complaint alleges that the Gorge Dam's "presence and operation" violates "the governing Congressional Acts" and "violates [the Supremacy Clause] . . . in that the [Congressional Acts] imposed a prior restriction against such dams." The complaint also asks for corresponding declarations that the Gorge Dam's presence and operation violate the Congressional Acts and Supremacy Clause. Indeed, at oral argument before the district court, the Tribe's counsel conceded that the suit involved federal questions: "But clearly [there's] a federal question, because the Supremacy Clause, the laws enacting this provision going back to 1848, were enacted by Congress as a matter of the supreme law of the nation."

Turning to the third requirement, "[t]he substantiality inquiry . . . [looks] to the importance of the issue to the

(treating a claim for declaratory relief under Washington's Declaratory Judgments Act as a state-law claim, even when such claim implicated a federal statute).

federal system as a whole." *Gunn*, 568 U.S. at 260. As evidenced by the FPA, the federal government has a strong interest "in maintaining control over [the] engineering, economic and financial soundness" of FERC-licensed projects, like the Gorge Dam. *First Iowa Hydro-Elec. Co-op. v. Fed. Power Comm'n*, 328 U.S. 152, 172 (1946). Indeed, the FPA was an effort to "secure enactment of a complete scheme of national regulation which would promote the comprehensive development of the water resources of the Nation." *Id.* at 180. Whether the Supremacy Clause and Congressional Acts govern Seattle's operation of the FERC-licensed Project implicates the federal government's strong interest in national regulation, and thus the issue is a substantial one.

The final requirement considers whether exercising jurisdiction will "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). That Congress intended the *federal government* to have comprehensive control over FERC-licensed projects supports that exercising jurisdiction will not disrupt "the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. And it does not appear that Washington State has any special responsibility in determining whether a FERC-licensed operator like Seattle has violated the Congressional Acts or the Supremacy Clause. *Cf. id.* at 264 (explaining that exercising jurisdiction over malpractice claims would disrupt the balance between federal and state courts, as states have a special responsibility in regulating lawyers' conduct). Thus, this action can be resolved "in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 258.

The circumstances here are analogous to those in *Hornish v. King County*, 899 F.3d 680 (9th Cir. 2018), in which we held that the complaint raised a substantial federal question. *Id.* at 691. In *Hornish*, plaintiffs sued in federal court seeking a declaration under Washington's Declaratory Judgments Act that Washington's King County had acquired certain limited property rights under the Trails Act.[9] *Id.* at 689. We analyzed the four substantial-federal-question requirements and found that they had been met. Plaintiffs' claim necessarily raised a federal issue because the court would have to interpret the Trails Act in determining the scope of King County's rights. *Id.* at 689–90. The County's rights under the Trails Act were in dispute. *Id.* at 690. The federal issue was substantial and would not disrupt the federal-state balance because, as evidenced by the Trails Act, "the Government has a strong interest in both facilitating trail development and preserving established railroad rights-of-way for future reactivation of rail service," and thus "the scope of the Trails Act is 'an important issue of federal law that sensibly belongs in a federal court.'" *Id.* at 691 (quoting *Grable*, 545 U.S. at 315). We therefore concluded that federal jurisdiction was proper. *Id.*

As in *Hornish*, the Tribe necessarily raises a federal issue because a court would have to interpret the Congressional Acts and apply the Supremacy Clause in determining whether Seattle is violating the Congressional Acts by operating the Gorge Dam without fishways. The parties dispute Seattle's obligations under the Congressional Acts

---

[9] The Trails Act "is the culmination of congressional efforts to preserve shrinking rail trackage by converting unused rights-of-way to recreational trails." *Preseault v. I.C.C.*, 494 U.S. 1, 5 (1990).

and the applicability of the Supremacy Clause.[10]   And finally, the United States's strong interest in national regulation of FERC-licensed projects, as evidenced by the FPA, supports that the issue of Seattle's obligations under the Congressional Acts is an important federal-law issue that properly belongs in federal court.  Thus, the district court correctly determined that removal was proper based on a substantial federal question.

The district court also properly exercised supplemental jurisdiction over the remaining state-law claims because they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  "Nonfederal claims are part of the same 'case' as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding."  *Trustees of Constr. Indus.*, 333 F.3d at 925 (internal quotation marks and citation omitted).  As the district court correctly pointed out, all the claims "center on a single, discrete issue: whether [Seattle] may continue to operate the Gorge Dam in the absence of a passageway for fish."  Because all the claims rest on the same underlying facts, the district court properly exercised supplemental jurisdiction.

Based on the above, we affirm the district court's order denying remand.

---

[10] As noted, the Tribe claims that the applicable "Supreme Law[s] of the nation" are the Congressional Acts.  And Seattle argues, among other things, that the Congressional Acts are not applicable through the Supremacy Clause because they were repealed by Congress.

## B

We also affirm the district court's dismissal for lack of subject matter jurisdiction because the Tribe's complaint is subject to section 313(b) of the FPA, which vests exclusive jurisdiction in the federal courts of appeals over all objections to FERC orders by a party to a FERC proceeding, even objections based on state law.[11]

> Section 313(b) provides:

> Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding *may obtain a review of such order in the United States*

---

[11] It is undisputed that the Tribe was a party to the Gorge Dam relicensing proceedings, as FERC granted the Tribe's motion to intervene in the proceedings. *See* FERC Order, 71 FERC ¶ 61159, at 61528–29; *see also* 18 C.F.R. § 385.102(c) ("Party means, with respect to a proceeding: . . . Any person whose intervention in a proceeding is effective under Rule 214[, 18 C.F.R. § 385.214]," which governs what persons may intervene and thereby become parties in FERC proceedings.).  Regardless, we have held that, under *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320 (1958), section 313(b) bars non-parties from challenging a FERC order *in any court*:

> Section 313 of the [FPA] provides that only "parties" to Commission proceedings may seek administrative or judicial review of the Commission's final orders. Because section 313 enumerates "the specific, complete and exclusive mode for judicial review of the Commission's orders," *City of Tacoma*, 357 U.S. at 336, a non-party to the Commission's proceedings may not challenge the Commission's final determination in any court.

*Cal. Trout v. FERC*, 572 F.3d 1003, 1013 (9th Cir. 2009) (citations and parallel citation omitted).

*court of appeals* for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part. . . . *Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part.*

16 U.S.C. § 825*l*(b) (emphasis added).

In *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320 (1958), the Supreme Court interpreted section 313(b) as vesting exclusive jurisdiction in the courts of appeals over *all* objections to FERC orders:

Congress in [Section] 313(b) prescribed the specific, *complete and exclusive* mode for judicial review of the Commission's orders. . . . It thereby necessarily precluded de novo litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review. Hence, upon judicial review of the Commission's order, *all objections to the order*, to the license it directs to be issued, and to the legal competence of the licensee to execute its

terms, *must be made in the Court of Appeals or not at all.*

*Id.* at 336 (emphasis added) (footnote omitted). The Court did not distinguish between challenges to a FERC order based on federal law and challenges to a FERC order based on state law, and the broad language the Court used admits of none. Moreover, the Court held that section 313(b) barred the State of Washington from relitigating state-law claims. *Id.* at 330, 341 (noting that the state's cross-complaint included a claim that the project would interfere with navigation in violation of a Washington statute and then holding that the claims in the cross-complaint were barred under section 313(b)).[12]

*California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908 (9th Cir. 1989), is also on point. There, we reasoned that "[b]y its express language, the [FPA] provides *exclusive* jurisdiction for the Courts of Appeals to review and make substantive modifications to FERC licensing orders" and "[g]iven Congress's careful choice of words,

---

[12] The Tribe argues that Justice Harlan's *concurrence* in *City of Tacoma* supports that section 313(b) does not apply to state-law claims. 357 U.S. at 341–42 (Harlan, J., concurring). This argument fails. First, of course, the argument is based on the separate opinion of one justice, and not the opinion of the Court. *See Pub. Watchdogs v. S. Cal. Edison Co.*, 984 F.3d 744, 757 n.7 (9th Cir. 2020) ("[C]oncurring opinions have no binding precedential value . . . ."). It also ignores the Court's broad language which draws no distinction between challenges based on federal law, as opposed to state law. And finally, Justice Harlan's suggestion that the FPA does not bar relitigation of state-law issues conflicts with the Court's holding that section 313(b) barred Washington from relitigating state-law claims. *See City of Tacoma*, 357 U.S. at 341–42 (Harlan, J. concurring).

there can be little room for argument over whether the statutory scheme vests sole jurisdiction over questions arising under the FERC licenses in the Courts of Appeals." *Id.* at 911. Because section 313(b) "confers exclusive jurisdiction in the courts of appeals and bars suit in district court," *id.* at 909, we held that the district court lacked subject matter jurisdiction over plaintiffs' claims, *id.* at 912.

In so holding, we rejected plaintiffs' argument that they were not attacking the FERC license because their claims arose under other federal laws, not the FPA. *Id.* Rather than accept plaintiffs' characterization of their challenges, we determined that we had to look at the essence of plaintiffs' claims in deciding whether they challenged the FERC license. *Id.* We held that the action challenged the FERC license because "the practical effect of the action in district court [was] an assault on an important ingredient of the FERC license." *Id.*

In sum, *City of Tacoma* and *California Save Our Streams* establish that the federal courts of appeals have exclusive jurisdiction under section 313(b) to review all objections to FERC orders issued under the FPA—including objections based on state law. *See City of Tacoma*, 357 U.S. at 336; *Cal. Save Our Streams*, 887 F.2d at 911. Further, a plaintiff cannot avoid section 313(b) through artful pleading; courts must review the substance of an action in deciding whether it challenges a FERC order. *See Cal. Save Our Streams*, 887 F.2d at 911–12.

So we turn back to the substance of the Tribe's complaint. The complaint does not *expressly* challenge the FERC Order, but the gravamen of the complaint—that the Gorge Dam must have fishways—is a direct attack on FERC's decision that no fishways were required. *See* FERC

Order, 71 FERC ¶ 61159, at 61535.  The Project's impact on fishery resources was a focal point of the relicensing process. *See, e.g.*, *id.* at 61530, 61535.  FERC specifically considered whether fishways were required.  *Id.* at 61535.  And it determined that no fishways were required because neither the Secretary of Commerce nor the Secretary of the Interior had prescribed a fishway under 16 U.S.C. § 811, and because the Settlement Agreement, the terms of which were incorporated into the FERC Order, stated "that all issues concerning environmental impacts from relicensing of the Project, as currently constructed, are satisfactorily resolved by these Agreements."  FERC Order, 71 FERC ¶ 61159, at 61535.  Because the Tribe's action attacks "an important ingredient of the FERC license," *Cal. Save Our Streams*, 887 F.2d at 912, it is subject to section 313(b) and can be brought only in the court of appeals.[13]  Thus, the district court correctly determined that it lacked subject matter jurisdiction.

## C

We next consider whether the district court properly dismissed the action given 28 U.S.C. § 1447(c), which, as noted, provides: "If at any time before final judgment it appears that the district court lacks subject matter

---

[13] Section 313(b) would also bar the Tribe from seeking review of the FERC Order in this court.  To seek review in this court, the Tribe had to (1) apply for rehearing with FERC within thirty days after May 16, 1995 (the issuance date of the FERC Order), and (2) file a petition with this court within sixty days after FERC's order on the application for rehearing.  *See* 16 U.S.C. § 825*l*(a)–(b).

jurisdiction, the case shall be remanded [to state court]."[14]

Section 1447(c) states that a district court *shall* remand a removed case when it concludes that it lacks subject matter jurisdiction.  But our precedent recognizes a futility exception to that requirement.  "A narrow 'futility' exception to this general [remand] rule permits the district court to dismiss an action rather than remand it if there is 'absolute certainty' that the state court would dismiss the action following remand." *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 920 n.6 (9th Cir. 2022) (quoting *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1197–98 (9th Cir. 2016)).[15]

---

[14] Seattle argues that § 1447(c) is inapplicable because Federal Rule of Civil Procedure 12(h)(3) controls when, as here, a case is validly removed, and the court later determines that it lacks subject matter jurisdiction on a basis different from the one that supported removal. Rule 12(h)(3) provides: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  We need not and do not address Seattle's argument regarding the apparent conflict between § 1447(c) and Rule 12(h)(3), because as explained below, we agree with Seattle's alternative argument that even if § 1447(c) applies, dismissal was appropriate. Thus, for purposes of our opinion, we assume that § 1447(c) applies.

[15] We first recognized the futility exception in *Bell v. City of Kellogg*, 922 F.2d 1418 (9th Cir. 1991):

> Where the remand to state court would be futile, however, the desire to have state courts resolve state law issues is lacking.  We do not believe Congress intended to ignore the interest of efficient use of judicial resources.

> Because we are certain that a remand to state court would be futile, no comity concerns are involved.

We have also observed that whether the futility exception remains good law is an open question given *International Primate Protection League v. Administrators of Tulane Educational Fund*, 500 U.S. 72 (1991), in which the Supreme Court did not reject the exception outright but noted "the literal words of § 1447(c), which, on their face, give no discretion to dismiss rather than remand an action." *Polo*, 833 F.3d at 1197–98 (quoting *Int'l Primate*, 500 U.S. at 89). But in *Polo*, we declined to find that the exception had been overruled. *Id.* And just this year in *Global Rescue Jets*, we applied the exception and held that the district court had properly dismissed the action based on futility. 30 F.4th at 920 & n.6. Our precedent thus continues to recognize the futility exception.

As a three-judge panel we are compelled to apply the futility exception unless it is "clearly irreconcilable with the reasoning or theory of intervening higher authority." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). But the Tribe has not argued that the futility exception has been overruled, and we decline to consider the issue sua sponte.[16]

> District court resolution of the entire case prevents any further waste of valuable judicial time and resources. The district court correctly denied the motion to remand and dismissed the state claims.

*Id.* at 1424–25. In *Polo*, we referred to the futility exception as the "*Bell* rule." 833 F.3d at 1197.

[16] The Tribe has also failed to argue, and thus we do not consider, whether our case law on the futility exception is conflicting. *See Albingia Versicherungs A.G. v. Schenker Int'l Inc.*, 344 F.3d 931, 938 (9th Cir. 2003) ("[S]ection 1447(c) means that if it is discovered at any time in the litigation that there is no federal jurisdiction, a removed case

*See Polo*, 833 F.3d at 1198 (declining to consider sua sponte whether the futility exception had been overruled because plaintiff failed to make the argument).  We are therefore bound by our precedent and must decide whether remand would be futile.

Remand here would be futile.  A state court would lack jurisdiction for the same reason the district court lacked jurisdiction: section 313(b) of the FPA vests the federal courts of appeals with *exclusive* jurisdiction over the Tribe's action.  Thus, "there is 'absolute certainty' that the state court would dismiss the action following remand," *Global Rescue Jets*, 30 F.4th at 920 n.6 (quoting *Polo*, 833 F.3d at 1198).

## IV

The district court correctly declined to remand because the complaint raises substantial federal questions.  It also properly determined that it lacked subject matter jurisdiction under section 313(b) of the FPA, which vests exclusive jurisdiction in the federal courts of appeals.  Finally, it was proper for the district court to dismiss the case under the futility exception to § 1447(c)'s remand requirement.

**AFFIRMED.**

---

must be remanded to the state court rather than dismissed."), *opinion amended and superseded on other grounds on denial of reh'g,* 350 F.3d 916 (9th Cir. 2003); *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257–58 (9th Cir. 1997) (stating that "[s]ection 1447(c) is mandatory, not discretionary" and citing with approval a Seventh Circuit case rejecting a futility exception).

W. FLETCHER, Circuit Judge, concurring in the result:

I concur in the result but do not concur fully in the reasoning of the majority's per curiam opinion.

The opinion accurately recounts that the Tribe brought suit in state court, contending that Seattle's operation of the Gorge Dam without a fishway violated federal and state law. Defendant Seattle removed the case to district court under 28 U.S.C. § 1441. The district court initially denied a motion to remand, concluding that a federal question had been sufficiently alleged in the complaint to support original federal question jurisdiction in that court. The district court later dismissed the suit for lack of subject matter jurisdiction, concluding that the suit challenged a licensing decision by the Federal Energy Regulatory Commission ("FERC"). The district court correctly held that federal court subject matter jurisdiction over such a challenge lies exclusively in the courts of appeals. *See* 16 U.S.C. § 825*l*(b).

The question before us is not whether the district court was correct in its initial denial of the Tribe's motion to remand. If that were the question, the per curiam opinion's discussion at pp. 10–14 would be relevant. However, that is not the question. The question, rather, is whether the district court was correct in its ultimate dismissal for lack of subject matter jurisdiction.

Once it became clear to the district court that the Tribe's suit is a challenge to a FERC order, over which courts of appeals have exclusive subject matter jurisdiction, the district court correctly concluded that it did not have original subject matter jurisdiction. Absent the so-called "futility exception" (about which more in a moment), the required course would have been for the district court to remand the suit to the state court as improperly removed. This is true

even though the district court's lack of subject matter jurisdiction had not been immediately apparent.  *See* 28 U.S.C. § 1447(c) (second sentence) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

The basic removal statute is clear that removal to the district court is proper only for cases over which the district court has original jurisdiction.  *See id.* § 1441(a) ("[A]ny civil action brought in a State court *of which the district courts of the United States have original jurisdiction*[] may be removed . . . to the district court of the United States for the district . . . embracing the place where such action is pending." (emphasis added)).  Because the district court did not have original subject matter jurisdiction over the suit, removal was improper and remand was required.

Arguing against remand in its briefing to our court, Seattle omitted the language italicized above when it paraphrased § 1441(a), thereby suggesting, incorrectly, that removal to district court is proper if *any* federal court would have subject matter jurisdiction.  *See* Red Brief at 10–11 ("'Removal presents a question of subject matter jurisdiction, which is reviewed de novo.'  This Court may affirm a court's decision to deny a motion to remand 'on any basis supported by the record.'  A defendant may remove a case filed in state court to *federal court over which a federal court would have jurisdiction*.  28 U.S.C. § 1441(c)." (emphasis added) (citations omitted)).

The only thing that saves this case from remand is our court's "futility exception," which allows a district court to dismiss rather than remand when it is obvious that the state court will have to dismiss the suit once it is remanded.  I agree with my colleague Judge Bennett both that dismissal

in this case was proper under our futility exception, and that the exception is based on a misinterpretation of the relevant statute.

BENNETT, Circuit Judge, joined by MURGUIA, Chief Judge, and FLETCHER, Circuit Judge, concurring:

Our precedent requires us to apply the futility exception to 28 U.S.C. § 1447(c)'s remand requirement, so I concur in our per curiam opinion.  I write separately because the futility exception does not comport with § 1447(c)'s plain text.  I believe that in the appropriate case, our court should reconsider the futility exception en banc and abandon it.

"[O]ur   inquiry begins with   the   statutory   text, and ends there as well if the text is unambiguous."  *In re Stevens*, 15 F.4th 1214, 1217 (9th Cir. 2021) (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (plurality opinion)).  Section 1447 is entitled, "Procedure after removal generally," and subsection (c) provides, in relevant part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."   The statute is plain and unambiguous.  Indeed, it could be neither simpler nor more straightforward.  It covers all periods from removal to final judgment.  And it requires a district court to remand a case to the state court from which the case was removed upon finding that it lacks subject matter jurisdiction.

The plain text admits of no exceptions, futility or otherwise.  *See Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991) ("[T]he literal words of § 1447(c), which, on their face, give no discretion

to dismiss rather than remand an action." (ellipsis omitted) (quoting *Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Maine Dep't of Hum. Servs.*, 876 F.2d 1051, 1054 (1st Cir. 1989)).[1]  The plain text ends our inquiry; there is no such thing as a futility exception to the statutory remand requirement.

Our cases recognizing the futility exception have never even attempted to reconcile the exception with the statutory text.  We adopted the exception in *Bell v. City of Kellogg*, 922 F.2d 1418 (9th Cir. 1991).  In *Bell*, we created the exception because "[w]e d[id] not believe Congress intended to ignore the interest of efficient use of judicial resources." *Id.* at 1424–25.  But we cited no authority that permitted us to amend the statute to match our belief.  And there is none. We did rely on a First Circuit case, *Maine Association*, which we interpreted as "impl[ying] that [the First Circuit] *would* be willing to recognize" a futility exception.  *Id.* at 1425 (emphasis added) (citing *Maine Ass'n*, 876 F.2d at 1054).  But the First Circuit declined to adopt a futility exception, noting that "the literal words of § 1447(c), . . . on their face, give [the district court] no discretion to dismiss rather than remand an action."  *Maine Ass'n*, 876 F.2d at 1054; *see also id.* ("And, we are unwilling to read such discretion into the statute, here, because we cannot say with absolute certainty that remand would prove futile.").  And indeed, a few months after we decided *Bell*, the Supreme Court decided *International Primate*, in which it relied on *Maine Association* to suggest that there are no exceptions to

---

[1] Despite its discussion of the plain text of § 1447(c), the Court did not decide whether § 1447(c) allowed for a futility exception.  *Int'l Primate*, 500 U.S. at 89.

§ 1447(c)'s remand requirement.  *Int'l Primate*, 500 U.S. at 88.

In *International Primate*, the Court did not decide whether there is a futility exception to § 1447(c)'s remand rule because it determined that uncertainties "preclude[d] a finding that a remand would be futile."  *Id.* at 89.  But as noted above, the Court suggested that no exceptions exist based on the plain statutory text: "We also take note, as did the First Circuit [in *Maine Association*], of 'the literal words of § 1447(c), which, on their face, give no discretion to dismiss rather than remand an action.'  The statute declares that, where subject matter jurisdiction is lacking, the removed case '*shall* be remanded.'"  *Id.* (ellipsis and citations omitted).[2]    Thus, *International Primate* also supports the proposition that there is no futility exception under § 1447(c).

Indeed, several circuits have expressly rejected a futility exception based on *International Primate* and the plain language of the statute.  *See Bromwell v. Mich. Mut. Ins. Co.*, 115 F.3d 208, 214 (3d Cir. 1997) ("In light of the express language of § 1447(c) and the Supreme Court's reasoning in *International Primate*, we hold that when a federal court has no jurisdiction of a case removed from a state court, it must remand and not dismiss on the ground of futility."); *Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 49 (4th Cir. 1996) ("[T]he futility of a remand to West Virginia state court does not provide an exception to the plain meaning of § 1447(c)." (citing *Int'l Primate*, 500 U.S. at 87–89)); *Smith v. Wis. Dep't of Agric., Trade & Consumer*

---

[2] Though dicta, we must give the Supreme Court's statement "due deference."  *United States v. Baird*, 85 F.3d 450, 453 (9th Cir. 1996).

*Prot.*, 23 F.3d 1134, 1139 (7th Cir. 1994) ("[T]he Supreme Court has squarely rejected the argument that there is an implicit 'futility exception' hidden behind the plain meaning of § 1447(c)." (citing *Int'l Primate*, 500 U.S. 72)); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("This provision [§ 1447(c)] is mandatory and may not be disregarded based on speculation about the proceeding's futility in state court." (citing *Int'l Primate*, 500 U.S. at 87–89)); *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 496 (6th Cir. 1999) ("[T]he futility of a remand to state court does not provide an exception to the plain and unambiguous language of § 1447(c)."); *but see Perna v. Health One Credit Union*, 983 F.3d 258, 273 (6th Cir. 2020) (noting that the Sixth Circuit has dismissed a removed case "when [its] holding conclusively establishes not just that [it] lack[s] jurisdiction but also that the state court lacks jurisdiction as well").

The Fifth Circuit has joined us in expressly adopting a futility exception to § 1447(c). *See Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 (5th Cir. 1990). But the Fifth Circuit's case law is as unpersuasive as ours. In *Asarco*, the Fifth Circuit declined to remand because it would be "a futile gesture, wasteful of scarce judicial resources." *Id.* But the court did not even mention § 1447(c). *Id.* And *Asarco* was decided before *International Primate*.[3]

In sum, § 1447(c) is clear: a district court must remand a removed case when it lacks subject matter jurisdiction.

---

[3] In a more recent unpublished disposition, the Fifth Circuit confirmed that it recognizes a futility exception. *See Boaz Legacy, L.P. v. Roberts*, 628 F. App'x 318, 320 & n.10 (5th Cir. 2016). But *Boaz*, like *Asarco*, did not discuss how concerns about wasting judicial resources trump the clear text of § 1447(c).

While there may be valid policy reasons for the futility exception, "it is not our role to choose what we think is the best policy outcome and to override the plain meaning of a statute, apparent anomalies or not."  *Guido v. Mount Lemmon Fire Dist.*, 859 F.3d 1168, 1175 (9th Cir. 2017), *aff'd*, 139 S. Ct. 22 (2018).  I therefore encourage our court to reconsider and abandon the futility exception in an appropriate case.